MEDFORD AND CHARLESTOWN RAILROAD COMPANY *vs.* INHABITANTS OF SOMERVILLE.

SAME *vs.* MIDDLESEX RAILROAD COMPANY.

Under the St. of 1864, *c.* 229, § 15, the selectmen of a town can revoke the location in the town of the track of a street railway which is chartered to extend beyond the limits of the town.

The selectmen of a town ordered a street railway corporation to remove its tracks from the side to the middle of a street; it did not obey the order; the selectmen then gave notice to all persons interested in the location of the railway to show cause why the location of the track in said street should not be revoked; and after a hearing they revoked the location as against the public interests. *Held*, that the notice was sufficient within the St. of 1864, *o.* 229, §§ 14, 15, and the adjudication of revocation final.

The plaintiffs and defendants, street railway corporations, made an agreement whereby the plaintiffs leased their railway to the defendants, and the defendants covenanted to assume all the liabilities and burdens imposed on the plaintiffs by their charter. A town through which the railway was located directed the track to be altered, but the defendants refused to alter it on the ground that the work ought to be done and paid for by the plaintiffs, and thereupon the town revoked part of the location, and threatened to revoke the rest. *Held*, that the plaintiffs could not maintain a bill in equity against the defendants to compel them to alter the track, inasmuch as the plaintiffs might alter the track themselves, and sue at law.

THE FIRST CASE was a bill in equity, filed in Middlesex, by a corporation chartered by the St. of 1855, *c.* 336, for the construction of a street railway from a point in Medford to a point in Somerville, where it should intersect with the railway of the Middlesex Railroad Company, a corporation chartered by the St. of 1854, *c.* 434, to construct a street railway from Boston through Charlestown into Somerville, to restrain the town of Somerville

from revoking or interfering with the location of the plaintiffs' tracks. The case, as it appeared from the amended bill and answer, on which it was reserved by *Ames*, J., for the consideration of the full court, was as follows :

In 1859 the selectmen of Somerville located the railway of the plaintiffs along Main Street in that town. In October 1869, and again in April 1870, the selectmen voted that the plaintiffs should remove their track from the side to the middle of Main Street, but the plaintiffs did not obey the order, alleging that no proper notice had been given of the intention to consider the removal.

On May 13, 1871, the selectmen passed an order that a hearing should be given by them on June 5, 1871, to all persons interested in the location of the plaintiffs' railway, " to show cause why the location of the said Medford & Charlestown Railroad track in Main Street in Somerville should not be revoked." Notice of this order was duly published, and on June 5, 1871, the selectmen passed the following order :

" Whereas due notice has been given, in accordance with the order of this board, of a hearing by this board, to all parties interested, that they may show cause why the location of the Medford & Charlestown Horse Railroad track in Main Street in Somerville should not be revoked, and whereas a hearing has been had, and all parties interested have had an opportunity to be heard, and whereas, in the judgment of this board, the interests of the public require that the location of said track on Main Street be revoked : It is therefore ordered that the location of the Medford & Charlestown Horse Railroad track in said Main Street be and hereby is revoked, and that the said railroad company be required to remove the same in conformity herewith, and put said street in as good condition as it was immediately before being occupied by said track, and that the clerk of this board cause notice hereof to be given by serving a copy of this order upon the said railroad company forthwith."

*E. F. Hodges*, for the plaintiffs.

*C. S. Lincoln & S. Z. Bowman*, for the defendants.

COLT, J. The plaintiff corporation is the owner of a street railway which forms part of a connected line between Medford

and Boston. It was originally located for a part of the distance through Main Street in the town of Somerville. That location the selectmen of Somerville, by an order passed June 5, 1871, reciting that in their judgment the interests of the public required it, declared to be revoked. And it is against a threatened interference with that portion of the plaintiffs' track under this order that the amended bill seeks relief.

It is denied in the first place by the plaintiffs, that selectmen have authority under the statute to revoke the location of street railways which extend by charter beyond the limits of their respective towns; because, it is said, that where a road is thus located, the public interests which may be affected by the action of these officers in any one locality must necessarily extend beyond their municipal limits; that it could not have been intended to give a power which might be exercised so as to destroy a connected line of road by rendering that part useless which happened to be outside the town limits; and that selectmen ought not to be final judges of the interests of the general public in the existence of such a road. But the answer is, that there is nothing in the terms of the statute which so limits the exercise of this authority. By its provisions, the board of aldermen of any city, or the selectmen of any town, in which any corporation is authorized to construct a street railway, may locate its tracks within their respective jurisdictions, under such restrictions as they deem the interests of the public require, or may wholly refuse to locate. The location and position of the tracks once located may be thereafter altered by the same authority, or the original location, after the expiration of one year and after due notice, may be wholly revoked, if, in the judgment of these municipal officers, the interests of the public require it. St. 1864, c. 229, §§ 14, 15.*

---

* "Section 14. The board of aldermen of any city, or the selectmen of any town, in which any corporation is authorized to construct a street railway may, upon the petition of such corporation, locate the tracks thereof within their respective jurisdictions, pursuant to the provisions of its charter : *provided*, that, before proceeding to locate such tracks, they shall give notice to all parties interested, by publication in such newspapers, or otherwise, as they may

The franchise which the plaintiffs took under their charter is by the laws of the Commonwealth thus limited and qualified. Their right to the use of the streets is not for all purposes exclusive, and must be exercised in common with the rights of other travellers, and a just regard to public convenience; and this end is attempted to be secured by giving to the officers of cities and towns, as the most fit tribunal for that purpose, the powers above enumerated, to be exercised as in their judgment the weight of the public convenience in the use of the streets may require. The Legislature have adhered from the first to the policy of making these corporations, in the use of the streets, subject to the control of the municipal officers of the cities and towns in which the franchise is to be used. And this control is given to these officers, as is said in *Union Railway Co.* v. *Cambridge,* 11 Allen, 287, 292, " not as representing a conflicting interest, but as independent bodies, charged with the duty of protecting the rights and promoting the convenience of the whole public."

---

determine, at least fourteen days before their meeting, of the time and place at which they will consider such location. After a hearing of all parties interested, they shall pass an order refusing the location, or granting the same, or any portion thereof, under such restrictions as they deem the interests of the public may require, and the location thus granted shall be deemed and be taken to be the true location of the tracks of the corporation, if its acceptance thereof in writing is filed with said mayor and aldermen or selectmen within thirty days after receiving notice thereof. The location and position of any tracks may be altered upon application of any party interested, by the same authority, and in the same manner, as is herein provided for the original location. The expense of such alteration shall be borne by such party as the board of aldermen or selectmen may determine.

" SECTION 15. The board of aldermen of any city, or the selectmen of any town, may, at any time after the expiration of one year from the time of the opening for use of any street railway in such city or town, if in their judgment the interests of the public require, after notice published as provided in the preceding section and a hearing, order that the location of any of the tracks in any street or highway shall be revoked, and the railway corporation shall thereupon remove the same, in conformity with such order, and put the street in as good condition as it was in immediately before being occupied by said tracks. If said corporation neglects to execute such order and make such repairs, after thirty days' notice thereof, then said board of aldermen and selectmen may cause the same to be executed and made at the expense of the railway corporation, to be recovered in an action of tort."

There is no invasion in this of the plaintiffs' constitutional rights of property, because it is one of the conditions annexed to the grant of its franchise.

It is further objected that the order of revocation is invalid, because the notice of the intended action given to parties interested was to show cause why the location should not be revoked. But we do not think the form of notice insufficient or calculated, in view of any previous action, to mislead. It is a form which does not necessarily imply that the act of revocation was determined upon in advance, and the order is expressly based on the judgment of the board at the time it was passed. We cannot inquire into the reasons which led to this action, or into the consequences which may follow.    *Bill dismissed, with costs.*

*The second case* was a bill in equity filed in Suffolk by the same plaintiffs, against the Middlesex Railroad Company. The case, as it appeared from the bill and answer, on which it was reserved by *Ames*, J., for the consideration of the full court, is stated in the opinion.

The case was argued at the same time as the first case by *E. F. Hodges*, for the plaintiffs, and *L. M. Child*, for the defendants.

COLT, J.  By a contract under seal with the Malden & Melrose Railroad Company, the plaintiff corporation transferred to that company the full and exclusive right to operate its railway for a term of years which has not yet expired, paying therefor a fixed sum per annum during the term.  Among other stipulations therein contained, the Malden & Melrose Railroad Company covenanted to assume all the liabilities, duties and burdens imposed on the plaintiff corporation by its charter, except those incident to its organization and existence, and to indemnify it from all liabilities and damages which might accrue from duties so imposed, or which might arise out of the use of the assigned premises.  It was further agreed that if the locations of the railway, or any of them, were lawfully and permanently revoked, without fault of the Malden & Melrose Railroad Company, the payments to be made by that company should cease, or proportionate abatement

be made. This contract was afterwards assigned to the defendant corporation, and on January 20, 1866, an agreement under seal between the plaintiffs and defendants was indorsed upon it, which, after reciting the previous assignment and the plaintiffs' consent to it, contains an agreement on the part of the plaintiffs to substitute the defendants for the Malden & Melrose Railroad Company, and on the part of the defendants, to discharge all the obligations of that company under it.

The bill states, in substance, that the selectmen of the town of Somerville, through which the railway in question is in part located, have revoked the location in part, and propose further to revoke it, thereby destroying the plaintiffs' property; and charges that if the defendants had complied with a previous order of the selectmen, changing the position of the tracks, the revocation would not have been made, and that it would now be repealed, and no further order made, if the defendants would now comply; but that the defendants decline to take any part in the matter, and deny all obligation or responsibility in the premises, declaring that if the alteration of the tracks is made at all, it must be at the expense of the plaintiffs, and without claim upon the defendants for remuneration. The prayer of the bill is that the defendants be decreed specifically to perform their agreement, and protect the property of the plaintiffs by complying with the orders of the town authorities in the premises.

The answer does not materially change the facts stated in the bill, but denies that any case is stated which entitles the plaintiffs to the relief prayed for; and the case is reserved upon the bill and answer.

It was objected at the argument, among other things, that the contract with the Malden & Melrose Railroad Company is not within the scope of the plaintiffs' corporate powers, and is therefore void as a lease; that the contract between the plaintiffs and defendants indorsed upon it in 1866 is void, as expressly forbidden by the St. of 1864, *c.* 229, § 24; that the orders of the selectmen requiring a removal and different construction of the track are illegal, and, if not, that the plaintiffs, and not the defendants, are bound to make the change. But, in the view we take of this

case, it is not necessary to consider those objections, or the answer which is made to them by the plaintiffs.

The order of the selectmen of Somerville of June 5, 1871, the legality of which was questioned when this bill was filed, is now held by us, in the case of the present plaintiffs against the town of Somerville, to be a legal revocation of the plaintiffs' location in Main Street. Against this action, no relief can be had by this bill; its effect upon the rights of the parties, whatever that may be, is fixed. If the revocation can be shown to have been the result of the defendants' neglect to perform covenants with the plaintiffs, then the question of their liability and the damages therefor must be wholly at law in an action upon those covenants. Nor can the bill be sustained as a bill seeking to avert the threatened action of the town authorities in reference to other locations, by compelling the defendants to make the alterations desired. In the dispute which exists between them as to which is obliged, by the terms of the contract, to make these alterations, the plaintiffs, upon the defendants' refusal, may protect themselves from loss or forfeiture, without the aid of a court of equity, by doing the work and looking for indemnity to the defendants' liability under the contract.                    *Bill dismissed, with costs.*