# NEW ORLEANS, MOBILE & TEXAS RAILWAY CO. *v.* THE STATE OF MISSISSIPPI, *ex rel.* The District Attorney.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF MISSISSIPPI.

Argued October 15, 1884.—Decided October 27, 1884.

The act of February 7th, 1867, of the Legislature of Mississippi (Laws of 1867, 332), and the act of August 19th, 1868, of the Legislature of Louisiana (Acts of La. 1868, No. 28, p. 32), and the act of Congress of March 2d, 1868 (15 Stat. 38), relating to the construction and maintaining of bridges over navigable waters on the route of a railroad between Mobile and New Orleans, when taken together so far as the last two may be considered in this case, do not release the plaintiff in error from the obligation imposed upon it by the said act of the Legislature of Mississippi to maintain a drawbridge with a space of sixty feet for the passage of vessels, across the channel of Pearl River, in its main channel, constituting the dividing line between Mississippi and Louisiana.

This was a petition for mandamus by the Attorney-General of the State of Mississippi on behalf of the State, brought in the courts of that State, and removed to the Circuit Court of

the United States for the Southern District thereof, to compel the plaintiff in error, as defendant below, to remove a bridge alleged to have been constructed by it without a draw across Pearl River, and in lieu thereof to construct and maintain a bridge which should have, in the central part of the channel, a drawbridge, which when open should give a space of sixty feet for the passage of vessels. A demurrer was interposed by defendant below, and an answer filed, without prejudice, to the demurrer. The contentions between the parties are stated in the opinion of the court. Each party in its contentions referred to the following statutes, which are also referred to in the opinion of the court.

I. The following clauses in an act of the Legislature of Mississippi, approved February 7th, 1867, relating to plaintiff in error:

"And it is also provided that said company is authorized and empowered to construct and maintain its said railroad over and across any of the waters of this State on the line of the same by bridges; *Provided, however,* That in the central portion of the channel of the Pearl River, of the Bay of St. Louis, of the Bay of Biloxi, and of the East Pascagoula River, and in each of them, said company shall construct and maintain a drawbridge, which, when open, shall give a clear space for the passage of vessels, of not less than sixty feet in width, and said company, after the construction of the said drawbridges, shall at all times thereafter, provide that said drawbridges shall be opened for the passage of any and all vessels seeking to pass through the same without unnecessary delay; *Provided, however,* That in case the company shall locate the line of their road across the channel of the Rigolet, at a point south of or below the principal entrance of Pearl River into the Rigolet, then the said company shall not be required to construct a drawbridge across any bayou leading into Pearl River, or across any small pass or mouth of said river. It is also provided that such part of this section as relates to Pearl River, if the line of the road shall be located across the said river at a point where it constitutes the boundary line between the State of Mississippi and the State of Louisiana, shall not take effect until the State of Louisiana has consented to and authorized the

same, or said company has built such a bridge across said Pearl River, for its said railroad, as shall be in accordance with this section, and also with any authority or power granted to said company by the said State of Louisiana in the premises, and such drawbridge may be built in the centre of the channel of said Pearl River, or in that portion of the same within the territory of the State of Louisiana or of this State, as most convenient for public use." Laws of Miss. 1867, pp. 332, 335, 336.

II. The following clauses in an act of the Legislature of Louisiana, approved August 19th, 1868, in reference to the same company:

"And it is also provided that said company is authorized and empowered to construct and maintain its said railroad over and across the waters of the State of Louisiana, known as the Pass Chef Menteur, Little Rigolet, Great Rigolet, or that part of Lake Pontchartrain east of the west line of Point aux Herebs, and the West Pearl River, and other streams and bayous between Lake Pontchartrain and Pearl River, and Pearl River, by bridges; *Provided, however,* That in the channel of that part of Lake Pontchartrain hereinbefore named there shall be constructed and maintained by said company a drawbridge, which, when open, shall give a clear space for the passage of vessels of not less than one hundred feet in width; and in the channel of the Pearl River the said company shall construct and maintain a drawbridge, which, when open, shall give clear space for the passage of vessels of not less than sixty feet in width, except in case the company shall locate their road across the Great Rigolet at a point south of (or below) the principal entrance of Pearl River into the Great Rigolet, when the company shall only be required to construct one drawbridge, which shall be in the channel of the Great Rigolet, as hereinbefore named; and said company, after the construction of the said drawbridges or drawbridge, shall at all times thereafter, provide that said drawbridges or drawbridge shall be opened for the passage of any and all vessels through the same without unnecessary delay. *It is also provided,* That such part of this section as relates to Pearl River, if the line of the road shall be located across the said river at a point where it constitutes

the boundary line between the State of Louisiana and the State of Mississippi, shall not take effect until the State of Mississippi has consented to and authorized the same, or said company has built such a bridge across said Pearl River for its said railroad as shall be in accordance with this section and also with any authority or power granted to said company by the State of Mississippi in the premises ; and such drawbridge may be built in the centre of the channel of said Pearl River, or in that portion of the same within the territory of the State of Mississippi or of this State, as most convenient for public use." Acts of La. 1868, No. 28, p. 32.

III. The following clause in the act of Congress of March 2d, 1868:

"That the New Orleans, Mobile & Chattanooga Railroad Company is hereby authorized and empowered to construct, build and maintain bridges over and across the navigable waters of the United States on the route of said railroad between New Orleans and Mobile for the use of said company, the passage of its trains of cars, passengers, and mail and merchandise thereon. And said Railroad Company, and its bridges aforesaid, when constructed, completed and in use in accordance with this act and the laws of the several States through whose territory the same shall pass, shall be deemed, recognized and known as lawful structures and a post-road, and are hereby declared as such. *Provided, however,* That the said company, in the construction of its bridges over and across the waters known as the Pascagoula River, the Bay of Biloxi, and the Bay of St. Louis, shall construct and maintain drawbridges in the channels thereof, which, when open, shall give a clear space for the passage of vessels of not less than eighty feet in the channels of the East Pascagoula River and of the Bay of Biloxi and of the Bay of St. Louis, and of not less than one hundred feet in the channel of the Great Rigolet; and said company shall at all times open the said drawbridges, and shall provide reasonable and necessary facilities for the passage of all vessels requiring the same, except during and for ten minutes prior to and after the time of the passage of the mail and passenger trains of said company." 15 Stat. 38.

The Circuit Court overruled the demurrer of the defendant below, and sustained the demurrer of the plaintiff below, and gave judgment accordingly. This writ of error was sued out to review that judgment.

*Mr. Gaylord B. Clark* and *Mr. Thomas L. Bayne* for plaintiff in error cited *Miller* v. *Mayor of New York*, 109 U. S. 385, and cases there cited; *Pennsylvania* v. *Wheeling Bridge Co.*, 13 How. 518; 18 How. 421; *Clinton Bridge Case*, 10 Wall. 454; *Escanaba Co.* v. *Chicago*, 107 U. S. 678; *South Carolina* v. *Georgia*, 93 U. S. 4; *Ex parte Yarbrough*, 110 U. S. 651, 654; Rev. Code Miss. 1880, §§ 2542, 2551; Bouvier Law Dict. Tit. Mandamus; High Extraordinary Remedies, §§ 1, 431, 539, 548; *State* v. *Zanesville & Maysville Turnpike Co.*, 16 Ohio St. 308; *United States* v. *McDaniel*, 7 Pet. 15; *Edwards* v. *Darby*, 12 Wheat. 207, 210; *Burgess* v. *Seligman*, 107 U. S. 20, 34, 35; *Carroll County* v. *Smith*, 111 U. S. 556, 562, 563.

*Mr. J. Z. George* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This case has been heretofore in this court upon a question of jurisdiction, and is reported as *Railroad Co.* v. *Mississippi*, 102 U. S. 135. The Supreme Court of Mississippi, in accordance with our decision, reversed the judgment of the inferior State court, with directions to set aside all orders made subsequent to the presentation of the company's petition and bond for the removal of the cause, and to proceed no further. The case was thereafter tried in the Circuit Court of the United States. The object of the suit is, by mandamus, to compel the railroad company, whose line extends from Mobile to New Orleans, to construct and maintain in the channel of Pearl River, where that stream is crossed by the company's road, on the line between Mississippi and Louisiana, a drawbridge, which, when open, will give a clear space of not less than sixty feet in width for the passage of vessels. It would seem from the uncontroverted allegations of the petition that the bridge originally constructed by the company across Pearl River had no draw, although the channel, at that point, according to the

Coast Chart, has about forty-five feet depth of water, and the river is nearly three hundred yards in width. But, in the answer filed in the Circuit Court, it was averred, and the demurrer to it admitted, that there was, at that time, a draw which gave a clear space, for the passage of vessels, of thirty-four to thirty-six feet in width.

By the final judgment, a peremptory mandamus was awarded requiring the company to remove the present bridge, and in lieu thereof construct and maintain one, giving a clear space of not less than, sixty feet in width. It is provided in the judgment that such drawbridge may be built "either in the centre of the channel of Pearl River, or in that portion of the same within the territory of the State of Louisiana," or of Mississippi, as "may be most convenient for public use."

The controlling question is, whether the railroad company is under any legal obligation to construct and maintain a drawbridge of the kind specified in the judgment of the Circuit Court.

The company was incorporated by an act of the General Assembly of Alabama, approved November 24th, 1866, with authority to construct a railroad from the city of Mobile to any point on the line between Alabama and Mississippi; and also, in continuation thereof, a railroad through Mississippi and Louisiana, with such rights, privileges and franchises as might be granted to the corporation by the latter States. Laws of Ala. 1866–7, p. 6. Its existence as a corporation was recognized and approved by an act of the Legislature of Mississippi, approved February 7th, 1867, by which it was permitted to have, exercise, and enjoy, within that State, the rights, powers, privileges and franchises granted to it by the State of Alabama, subject to the conditions, provisions and restrictions presented in said act and by the general laws of Mississippi. By the same act the company was authorized to construct and maintain a railroad from any point on the line between Mississippi and Louisiana, thence towards and to any point on the line between Mississippi and Alabama, and extend the same, as contemplated in its act of incorporation, from the western boundary of the State to New Orleans, and from its eastern

boundary to Mobile. It was given a right of way across the waters, water-courses, rivers, bays, inlets, streets, highways, turnpikes or canals within Mississippi, subject, however, to the condition that "the said company shall *preserve* any water-course, street, highway, turnpike or canal which its said railroad may so pass upon, along, intersect, touch or cross, so as not to impair its usefulness to the public unnecessarily ; or if temporarily impaired in and during the construction of said railroad, the said company shall restore the same to its former state, or to such state that its usefulness and convenience to the public shall not be unnecessarily or materially impaired or injured."

But that part of the act which has special reference to the issues in this case, and upon the construction and effect of which depend the rights of the parties, is given in the statement preceding this opinion.

It will be observed that reference is made to "the central portion of the channel of the Pearl River," and, also, to "the principal entrance of Pearl River into the Rigolet." It was not disputed in argument that two distinct localities are here described. Pearl River is about 375 miles in length. It rises in the centre of Mississippi, and is navigable, by small craft, in good stages of water, as far as Jackson, the capital of the State. Running southwardly, it empties by one of its mouths into Lake Borgne, and by other mouths into the Rigolet—commonly called the Great Rigolet. The main or eastern branch of the Pearl, emptying into Lake Borgne, constitutes, for about one hundred miles above its mouth, to the 31° of north latitude, the dividing line between Mississippi and Louisiana. 3 Stat. 348. The other branch, constituting a water-way between the main river and the Great Rigolet, is wholly within the State of Louisiana. It is clear that the words "in the central portion of the channel of the Pearl River" have reference to the main or eastern branch, which constitutes the dividing line between Mississippi and Louisiana, and consequently, that it was in the channel of that branch (if the road was located across it) that the company was required to construct and maintain a drawbridge, giving a clear space of not less than sixty feet in width.

But the company's contention is, that the Legislature of Mississippi intended to relieve it from all obligation to construct a drawbridge in that branch of Pearl River, upon its locating the road at some point "south of or below the principal entrance of Pearl River" into the Great Rigolet; this, because, in that contingency, the act expressly declares that the company "shall not be required to construct a drawbridge across any bayou leading into Pearl River, or across any small pass or mouth of the said river." This construction of the statute necessarily implies that the Legislature of Mississippi —although carefully providing that the water-courses and other highways of the State, across which the road was constructed, should be preserved against material or permanent impairment of their usefulness to the public—was willing, in consideration merely of the road being located in Louisiana, south of or below the principal entrance of the Pearl River into the Great Rigolet, to have the mouth of the main or eastern branch of that river closed entirely against vessels engaged in commerce. We say "closed entirely," because the position of the company is, that the present drawbridge was constructed by it voluntarily, and without any legal obligation whatever to do so; and that it has the right, consistently with the restrictions imposed upon it by the Mississippi act, to span Pearl River with a bridge having no draw, and, consequently, with a bridge that would wholly prevent vessels passing from Lake Borgne into Pearl River, or from Pearl River into Lake Borgne.

There is just enough in the peculiar and confused wording of the Mississippi statute to furnish plausible ground for such a construction of its provisions. But we are satisfied that the State did not intend to put it in the power of the railroad company to destroy, for all purposes of navigation, that branch of Pearl River which empties into Lake Borgne. There is no ground to infer from the words of the act that a drawbridge, of the kind indicated, "in the central portion of the channel of Pearl River," was deemed of any less consequence than like drawbridges in the Bay of St. Louis, the Bay of Biloxi, and East Pascagoula River. By language almost too clear to require construction it was made a condition of the exercise,

within Mississippi, of the corporate privileges and franchises of the company, that it should construct and maintain in each of those water-ways across which its road might be located, a drawbridge which, when open, would give a clear space of not less than sixty feet in width.

This construction finds strong support in the clause immediately succeeding that which refers to the possible location of the road at a point south of the principal entrance of the Pearl River into the Great Rigolet. If the line of the road was located across the Pearl River at a point where it constitutes the dividing line between Mississippi and Louisiana, then the section, so far as it related to Pearl River, was not to take effect until Louisiana gave its assent or the company bu'lt such a bridge across the Pearl River as was in accordance as well with that section as with the authority granted to the company by Louisiana; in which event "such drawbridge may be built in the centre of the channel of said Pearl River or in that portion of the same within the territory of the State of Louisiana or of this State as may be most convenient for public use." So far from the Legislature being willing to dispense with a draw sixty feet in width across the channel of Pearl River, upon the location of the road south of the principal entrance of Pearl River into the Great Rigolet, it would seem that great care was taken to secure the assent of Louisiana to just such a bridge across Pearl River as the Mississippi act contemplated.

The error in the argument in behalf of the company is in assuming it to be indisputably clear that the words "mouth of said river," in the clause or proviso relating to the location of the road south of the principal entrance of Pearl River into the Rigolet, refers to the mouth of that branch of Pearl River which empties into Lake Borgne. That construction of the words "mouth of said river" implies that there was some provision of the Mississippi act requiring the company to construct its drawbridge at the junction between Pearl River and Lake Borgne. But no such provision is contained in the act. Had the road not been located south of the principal entrance of Pearl River into the Great Rigolet, the company could have

constructed its drawbridge in the channel of the main river at any point above its mouth on the line between Mississippi and Louisiana. We incline to the opinion that the words "mouth of said river" were intended to refer to one of the mouths of that branch of the Pearl emptying into the Great Rigolet. The Pearl formed, or was supposed to form, a junction with the Great Rigolet by more than one mouth. There is a principal entrance or mouth, or the Mississippi Legislature supposed there was, and there is, or there was supposed to be, a small pass or small mouth of that branch of the Pearl in the same locality. If the road was located across the channel of the Great Rigolet south of, or below, the *principal* entrance of the Pearl River into the Great Rigolet, the water-way connecting Pearl River and the Great Rigolet would not be materially obstructed by the railroad bridge across the latter; and it would, consequently, not be vital to the people of Mississippi, interested in the navigation of the river, that drawbridges should be constructed across bayous leading into Pearl River, in that locality, or across any small pass or [small] mouth of said river, near the line upon which the road was located. As the location of the road south of the principal entrance of Pearl River into the Rigolet would secure unobstructed navigation between the Great Rigolet and the main river, through that branch of Pearl River which empties into the Great Rigolet, the Legislature of Mississippi was willing to declare that the construction and maintenance of drawbridges across "any bayou leading into Pearl River, or across any small pass or [small] mouth of said river," was not a condition precedent to the exercise by the company, within her limits, of its corporate franchises and privileges. Such, we think, is the more reasonable construction of the clause in the Mississippi act upon which the company rests its claim of exemption from the duty to construct and maintain such a drawbridge as is described in the final judgment.

It was claimed in argument that the provisions of an act passed August 19th, 1868, by the Legislature of Louisiana, in reference to this railroad company, sustains the construction of the Mississippi act for which the railroad company contends.

So much of the Louisiana act as bears upon this point is also given in the statement preceding this opinion.

If the provisions of the Louisiana act may be consulted in determining the construction of the statute of Mississippi, we do not perceive anything in them which should lead to a conclusion different from that already indicated. The slight difference in the phraseology of the two acts does not justify the belief that the Louisiana Legislature contemplated that the railroad company might cross the Pearl River, on the boundary line between that State and Louisiana, by a bridge which contained no draw. When the Louisiana act provided that, upon the location of the road across the Great Rigolet, at a point south of the principal entrance of Pearl River into the Great Rigolet, " the company shall only be required to construct *one drawbridge, which shall be in the channel of the Great Rigolet,*" it was not meant to dispense with the drawbridge required to be maintained in the channel of the Pearl River at the point where the road crossed that stream on the dividing line between Louisiana and Mississippi. As already stated, the location of the road below the principal mouth by which the Pearl emptied into the Great Rigolet, secured navigation through *that mouth*, against obstruction ; consequently, a drawbridge would be unnecessary across other and smaller mouths by which the Pearl formed a junction with the Great Rigolet. To avoid the possibility of any one claiming that drawbridges should be constructed over *all* the mouths of the Pearl, large and small, crossed by the road in the vicinity of its junction with the Great Rigolet, it was provided that in the event the road passed below the principal entrance of Pearl River into the Great Rigolet, only one drawbridge need be maintained in that locality and that one over the Great Rigolet.

One other point, pressed upon our attention, remains to be considered. By an act of Congress, approved March 2d, 1868, 15 Stat. 38, this railroad company was empowered and authorized to construct and maintain bridges over navigable waters of the United States on its route between New Orleans and Mobile. That act declared that the railroad and its bridges,

when constructed, completed and in use, in accordance with that act, "and the laws of the several States through whose territory the same shall pass, shall be deemed, recognized and known as lawful structures and a post-road, and are hereby declared as such." The same act declares, by way of proviso, that the company in the construction of its bridges over and across the waters known as East Pascagoula, the Bay of Biloxi, the Bay of St. Louis, and the Great Rigolet, shall construct and maintain drawbridges in the channels thereof, which, when open, shall give a clear space for the passage of vessels, of not less than eighty feet in the channels of East Pascagoula River, of the Bay of Biloxi, and of the Bay of St. Louis, and of not less than one hundred feet in the channel of the Great Rigolet.

There is nothing in this legislation by Congress which, expressly or by implication, diminishes in any degree the legal obligation of the railroad company to maintain such a drawbridge in the channel of Pearl River, on the line between Mississippi and Louisiana, as is required by the laws of those States. Nor does the act of Congress affect the authority of any court of competent jurisdiction, as to the parties, to compel the discharge of that obligation. While Congress provided that the drawbridges over the East Pascagoula River, the Bay of St. Louis and the Bay of Biloxi, should give a clear space of eighty, rather than sixty, feet in width for the passage of vessels, it did not dispense with the requirement in the statutes of Mississippi and Louisiana of a drawbridge in the channel of Pearl River. Presumably, Congress was of opinion that a drawbridge in that river, giving a clear space of sixty feet, was ample for all purposes of navigation. Hence, the act of March 2d, 1868, made no specific reference to Pearl River. The duty imposed by the States upon the railroad company, in respect of a drawbridge in Pearl River, was the same after, as it was before, the passage of the act of Congress; for that act, in express words, declares the railroad and its bridges to be lawful structures and a post-road, "when constructed, completed and in use," in accordance with the act of Congress "and the laws of the several States through whose territory the same shall

pass." Mississippi gave its consent to the exercise and enjoyment by this company of its corporate powers within her limits upon the condition, among others, that it should construct and maintain a drawbridge of a particular kind in the channel of Pearl River where that stream is crossed by the company's road. That condition not having been performed, the State has a right to ask the aid of the court in compelling its performance. And, in granting the relief asked, no right belonging to the company, under the Constitution or laws of the United States, has been violated or withheld.

*Judgment affirmed.*