SELECTMEN OF AMESBURY & others *vs.* CITIZENS ELECTRIC
STREET RAILWAY COMPANY.

Essex.    March 27, 1908. — June 16, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Street Railway*, Wrongful discontinuance of use of track.  *Statute*.

St. 1906, c. 463, Part III. § 76, providing that, " if a street railway company with-
out right or lawful excuse discontinues the use of any track and when requested
. . . refuses to operate the same," the mayor of the city or the selectmen of the
town in which the track is located may compel such company to resume the
use of the track by petition to the Supreme Judicial Court, was intended to
and does give redress for such a wrongful discontinuance happening before the
passage of the statute.

Where by its original charter the right of a certain street railway company to lay
its tracks upon the public streets was made subject to the determination of the
authorities of the respective municipalities in which such streets lay, and such
authorities, after one year from the opening of the tracks for use, might at their
pleasure revoke such location, upon which revocation the tracks must be taken
up, and where, as to the location granted by the authorities of a certain town,
there was no agreement or statutory enactment requiring such company to con-
tinue the use of its tracks in the town as a condition of the grant of location
therein, a discontinuance of such use is not " without right or lawful excuse "
and gives to such town no right by petition to the Supreme Judicial Court
under St. 1906, c. 463, Part III. § 76, to compel a resumption of the use of
the track.

PETITION, filed in the Supreme Judicial Court for the county
of Essex on August 10, 1906, under St. 1906, c., 339, now St.
1906, c. 463, Part III. § 76, by the selectmen of the towns of
Amesbury and Merrimac to compel the respondent to resume
the operation of a part of its street railway, called the Pleasant
Valley line.

The case was referred to a master, who filed a report, to
which the respondent filed exceptions, upon which there was a
hearing before *Morton*, J., who reserved the case for considera-
tion by the full court.

*G. W. Cox*, (*J. F. Bacon* with him,) for the respondent.

*A. W. Reddy & T. H. Hoyt*, for the petitioners, submitted a
brief.

*B. W. Warren*, for persons not before the court, filed a brief
by leave of court.

SHELDON, J.  This petition is brought under St. 1906, c. 339, now St. 1906, c. 463, Part III. § 76, to compel the respondent to resume the operation of a certain part of its railway, called the Pleasant Valley line.  The defendant had abandoned and discontinued the operation of this line in January, 1905; and the first question is whether the petition can be maintained under a statute passed more than a year thereafter.

This statute in no way affected the rights of the parties; it expressly provided that nothing therein contained should be "deemed a legislative construction of any existing law or an impairment of any existing right of a street railway company to discontinue the use of tracks." It simply provided a new remedy for any unlawful discontinuance by giving a direct resort to the courts.  It furnished a new remedy; but it impaired or affected no contractual obligations and disturbed no vested rights.  As it was purely remedial in its character and did not change any existing rights, it naturally would be applicable to proceedings begun after its passage, though relating to acts done previously thereto.  This is the doctrine which was declared in *Foster* v. *Essex Bank*, 16 Mass. 245, 273.  It has been applied in the construction of many similar statutes, so as to make a new remedy available for the protection of a prior right or for the redress of formerly existing grievances. *Bemis* v. *Clark*, 11 Pick. 452, 454, *Simmons* v. *Hanover*, 23 Pick. 188, 194.  *Wood* v. *Westborough*, 140 Mass. 403, 409.  *Rogers* v. *Nichols*, 186 Mass. 440.  It was the plain intention of the statute to provide a remedy for a case like this by giving redress for a wrongful discontinuance already existing as well as for any that might occur in the future.  It cannot be held that the words "if a street railway . . . discontinues the use of any track" apply merely to a future discontinuance.  A somewhat similar contention was considered and rejected in *Commonwealth* v. *Dracut*, 8 Gray, 455, and *Brown* v. *Pendergast*, 7 Allen, 427.  In the former case the court relied on "the long-established rule of construing statutes according to the manifest intent of the Legislature, though apt words to express that intent may not be used, or though such construction may not accord with the letter of the statute."  And in the latter case the court said, "We apply an old and unshaken rule in the construction of statutes, to wit, that the intention of a

remedial statute will always prevail over the literal sense of its terms, and therefore, when the expression is special or particular, but the reason is general, the expression should be deemed general." The rule of cases like *Garfield* v. *Bemis*, 2 Allen, 445, where the giving of a new remedy would result in the revival of a former right which has absolutely lapsed, is not to be applied here. This petition can be maintained if the respondent's discontinuance of its Pleasant Valley line was without right.

When the respondent company purchased these lines of railway in 1899, it had authority under St. 1899, c. 304, to complete the railway and its equipment, and to maintain and operate the same. But there was nothing compulsory in these provisions; and the respondent would not have lost its property rights in the rails or materials or in any other real or personal estate which it had acquired, if it had entirely failed to operate the railroad. *French* v. *Jones*, 191 Mass. 522. But it did assume control of all the routes which it had bought, including this Pleasant Valley line, and continued to operate them all until it discontinued the use of this line in January, 1905.

The respondent, like all street railway companies, and like the lighting company spoken of in *Weld* v. *Gas & Electric Light Commissioners*, 197 Mass. 556, is a *quasi* public corporation, organized for the exercise of an important public franchise, and bound to exercise that franchise for the benefit of the public and not merely for its own profit. Shaw, C. J., in *Commonwealth* v. *Temple*, 14 Gray, 69, 76. But it has not, like steam railroads, an exclusive control and a vested right of property in the soil upon which its tracks are laid. In the original charter given to this company's predecessor, the Newburyport and Amesbury Horse Railroad Company, (St. 1864, c. 53,) its right to lay its tracks upon the public streets was made subject to the determination of the mayor and aldermen or selectmen of the respective cities or towns, and those officers, after one year from the opening of its tracks for use, might at their pleasure revoke the location thereof, and the tracks thereupon must be taken up. Similar provisions were either contained in other street railway charters or were afterwards supplied by amendments thereto. Accordingly, this court said, in *Attorney General* v. *Metropolitan*

*Railroad,* 125 Mass. 515, 517, 518, that " the peculiar privilege given [to street railway companies] is the right, not to acquire land or an easement in land, but only the right, as long as permitted by certain municipal authorities, to lay tracks in streets already appropriated to the uses of public travel." So in *Springfield* v. *Springfield Street Railway,* 182 Mass. 41, 48, it was said that grants to street railway companies of locations in the public ways are in the nature of a privilege or permit to use the public ways given by cities and towns by virtue of authority from the Legislature. And the court added, " They are analogous to licenses given to run omnibuses along certain routes, though, of course, to make the analogy complete the omnibuses would have to be built so as to run on rails laid in the streets. . . . They convey no exclusive rights in the highways or streets in which they are granted, but are to be used in common with others having occasion to use the public ways. The public authorities retain in the main full control over the streets or ways in which they exist, and may revoke the locations or alter or discontinue the ways without liability to damages therefor, and subject only to such limitations, if any, as the Legislature may see fit to impose." See to the same effect *Union Railway* v. *Mayor & Aldermen of Cambridge,* 11 Allen, 287. And as a bare license may at any time be revoked or terminated by the licensor, so the licensee is at liberty at any time to cease wholly to avail himself of the permission given and to discontinue his action thereunder, unless there has been some agreement to the contrary. This was the doctrine maintained in Montana and Texas in cases not unlike the one before us. *State* v. *Helena Power & Light Co.* 22 Mont. 391. *San Antonio Street Railway* v. *State,* 90 Texas, 520, reversing *S. C.* 10 Tex. Civ. App. 12, and 38 S. W. Rep. 54. To the same effect is *York & North Midland Railway* v. *Queen,* 1 El. & Bl. 858. But there is nothing either in the respondent's charter or in that of its predecessor, or in any other statute before 1891, or in the grant of any location, to the effect that the line in question shall be continued in operation. And the view that, just as these locations might be revoked by the municipal authorities, (*Medford & Charlestown Railroad* v. *Somerville,* 111 Mass. 232,) so they might be abandoned or their use discontinued by the railway com-

pany, finds support in legislation. The first general street railway enactment was St. 1864, c. 229 ; and § 19 of this act provided that "if a street railway company voluntarily discontinues the use of any part of its tracks for a period of six months, the streets or highways occupied by the same shall, upon the order of the board of aldermen of the city or the selectmen of the town, forthwith, at the expense of said company, be cleared of said tracks, and put in as good condition for the public travel as they were in immediately before being so occupied." After the passage of this statute, the commissioners appointed under c. 86 of the Resolves of 1864, in their report to the Legislature of 1865 (House Docs. of 1865, No. 15), called the attention of the Legislature to this subject by saying, "It does not seem to us that any further legislative provision in regard to allowing railway corporations to discontinue the use of their track in any street is demanded. As their rights in the streets . . . are of the most precarious nature, we suppose it cannot fairly be claimed that the companies have incurred any duty or obligation to continue the transportation of passengers longer than it proves remunerative." The fact that, after the Legislature had received this report, the provisions of St. 1864, c. 229, § 19, were substantially re-enacted in later codifications certainly tends to show that the Legislature considered that, subject to the provisions of their charters and other statutes, street railway companies might voluntarily discontinue in whole or in part the use of their tracks. See St. 1871, c. 381, § 25 ; Pub. Sts. c. 113, § 25 ; R. L. c. 112, § 36 ; St. 1906, c. 463, Part III. § 76.

Some limitations have indeed been put by later statutes upon the formerly unrestrained power of location by municipal officers, and the power of final action has been conferred upon other public officers. St. 1898, c. 578, § 17. R. L. c. 112, § 32. St. 1906, c. 463, Part III. § 66. But it still remains true that an ordinary street railway company holds its locations upon the public ways without having any estate of its own in the lands.

But this right was of course subject to legislative control. *Brownell* v. *Old Colony Railroad,* 164 Mass. 29. In 1891 it was enacted that "Whenever in the opinion of the railroad commissioners additional accommodations for the travelling public are required upon any street railway, they may, after due notice to

the street railway company and hearing thereon, make such order requiring additional accommodations to be provided as they think justice to all parties concerned requires, and they may alter, revoke or renew the same. . . . Any street railway corporation which neglects to comply with any such order for more than one week after it receives notice thereof in writing shall forfeit" a sum stated. St. 1891, c. 216, re-enacted with slight verbal changes in St. 1906, c. 463, Part III. § 97. After the enactment of this statute and under the provisions of Pub. Sts. c. 112, §§ 14, 17, either the municipal officers or twenty or more legal voters of a city or town within which part of any street railway was located could, if the public accommodation so required, obtain an order from the board that the railway company should furnish such additional accommodations as were needed upon its railway, including of course any part thereof of which the company had chosen to discontinue the operation; for we cannot doubt that, so long at least as the tracks remained in the street, they were still a part of the company's street railway. One effect accordingly of this statute was to make the company's discontinuance of the use of any portion of its tracks subject to the investigation and control of the board of railroad commissioners in the manner provided for; but otherwise the power of the company remained unaffected. In this case the board has made no order.

In passing upon this question we have not found much assistance from the decisions of the courts of other States, either as to railroad or street railway companies, which have been called to our attention by the industry of the petitioners' counsel. Many of them turned upon the mandatory language of the charters or other statutes or of the ordinances which were before the courts. *Union Pacific Railroad* v. *Hall*, 91 U. S. 343. *State* v. *Hartford & New Haven Railroad*, 29 Conn. 538. *Mayor* v. *Dry Dock Railroad*, 133 N. Y. 104. *Flint & Père Marquette Railroad* v. *Rich*, 91 Mich. 293. *Potwin Place* v. *Topeka Railway*, 51 Kans. 609. *People* v. *St. Louis, Alton & Terre Haute Railroad*, 176 Ill. 512. Undoubtedly a valid requirement in an order of location would be enforced, *Selectmen of Gardner* v. *Templeton Street Railway*, 184 Mass. 294, but no such question is before us. Other cases relied on by the petitioners were decided upon the ground that the

property of a railroad company is charged with the public duty and held subject to the trust to carry out the objects of its charter. *Gates* v. *Boston & New York Air Line Railroad*, 53 Conn. 333. *Pierce* v. *Emery*, 32 N. H. 484. *State* v. *Dodge City, Montezuma & Trinidad Railway*, 53 Kans. 377. Others were cases in which a company sought to retain a part of its franchise or of some particular location while abandoning the rest of it. *People* v. *Albany & Vermont Railroad*, 19 How. Pr. 523, and 24 N. Y. 261. *Bridgeton* v. *Bridgeton & Millville Traction Co.* 33 Vroom, 592. *People* v. *Louisville & Nashville Railroad*, 120 Ill. 48. *State* v. *Spokane Street Railway*, 19 Wash. 518. But here the respondent has discontinued its use of the whole of the tracks covered by the locations under which they were built. And *State* v. *San Antonio Railway*, 38 S. W. Rep. 54; 10 Tex. Civ. App. 12, has, as we have already seen, been reversed in 90 Texas, 520.

We may add that it would be difficult, in the absence of statutory requirement, to reach the conclusion that a street railway company with so small a capital and resources so limited as those shown here should be required to operate a branch line which is not an integral part of its main system, and which has not sufficient patronage to meet its running expenses. If it were a steam railroad, it would not be required, under the decision in *Commonwealth* v. *Fitchburg Railroad*, 12 Gray, 180, to run passenger trains on such a branch; but in the case of a street railway, which does not carry freight, this means the complete disuse of its tracks. Substantially this rule was affirmed in *Sherwood* v. *Atlantic & Danville Railroad*, 94 Va. 291, and in *Jack* v. *Williams*, 113 Fed. Rep. 823. See also *Ohio & Mississippi Railway* v. *People*, 120 Ill. 200; *People* v. *Rome, Watertown & Ogdensburgh Railroad*, 103 N. Y. 95. The general rule for such cases was stated by Gray, J., in *Northern Pacific Railroad* v. *Dustin*, 142 U. S. 492, 499 : "If, as in *Union Pacific Railroad* v. *Hall*, 91 U. S. 343, the charter of a railroad corporation expressly requires it to operate its railroad as a continuous line, it may be compelled to do so by mandamus. So if the charter requires the corporation to construct its road and to run its cars to a certain point on tidewater (as was held to be the case in *State* v. *Hartford & New Haven Railroad*, 29 Conn. 538), and it had so constructed

its road and used it for years, it may be compelled to continue to do so. And mandamus will lie to compel a railroad corporation to build a bridge in compliance with an express requirement of its charter. *New Orleans, Mobile & Texas Railway* v. *Mississippi*, 112 U. S. 12. But if the charter of a railroad corporation simply authorizes the corporation without requiring it to construct and maintain a railroad to a certain point, it has been held that it cannot be compelled by mandamus to complete or maintain its road to that point when it would not be remunerative. *York & North Midland Railway* v. *Queen*, 1 El. & Bl. 858. *Great Western Railway* v. *Queen*, 1 El. & Bl. 874. *Commonwealth* v. *Fitchburg Railroad*, 12 Gray, 180. *State* v. *Southern Minnesota Railroad*, 18 Minn. 40."

We cannot say that the respondent's discontinuance of this line was "without right or lawful excuse" within the meaning of the statute; and it is not necessary to consider the exceptions taken by the respondent to the master's report. The petition must be dismissed.

*So ordered.*