THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. THE ROME, WATERTOWN AND OGDENSBURGH RAILROAD COMPANY, Appellant.

As by the Code of Civil Procedure (§ 2070), a peremptory writ of *mandamus* is only authorized in the first instance "where the applicant's right to a *mandamus* depends only upon questions of law," in determining whether the issuing of the writ is proper, simply the facts alleged in the petition

which are not denied or put in issue, and the affirmative allegations in the opposing affidavits may be considered.

*It seems* where the material averments of the petition are put in issue, or the answering affidavits contain allegations showing that a peremptory writ ought not to issue, the court should in the first instance award an alternative writ.

A writ applied for by the attorney-general on behalf of the people may only be issued to subserve a public interest and to protect a public right.

Assuming that where a town was bonded to aid in the construction of a railroad, on condition that a permanent depot should be erected and maintained at a specified place in the town, this creates a contract between the railroad corporation and the town; the contract may not be enforced by a writ of *mandamus*, issued on behalf of the people at the instance of the attorney-general. The contract right and obligation are not in any proper sense a public matter in which the people of the State in their sovereign capacity are interested.

*It seems* such a contract must be enforced by some proceeding on behalf of the town.

Such a contract obligation is not a lien or charge upon the property of the railroad corporation, and does not devolve upon a purchaser of the property on foreclosure sale, or upon a new corporation organized under the statute to operate the road.

A decision of the board of railroad commissioners, constituted by the act of 1882 (Chap. 353, Laws of 1882), has no binding or conclusive authority.

Where a railroad company by consolidation becomes the owner of two lines of road between the same points, and can substantially accommodate the people of the State by operating one of them, and can abandon the other without serious detriment to any considerable number of people, it may not be compelled by *mandamus* to operate both, where the operation of the line, which may thus be abandoned, entails great expense without any return.

(Argued June 3, 1886 · decided October 5, 1886.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, made November 20, 1885, which affirmed an order of Special Term granted on the application of the attorney-general directing the issuing of a peremptory writ of *mandamus*.

The following are the material facts alleged in the petition of the attorney-general : That the Rome, Watertown and Ogdensburg Railroad Company is a railroad corporation, organized under the laws of this State, and was engaged in the operation

of a railroad from Rome, Oneida county, to Watertown, Jefferson county, and to points north on the St. Lawrence river, passing through the town of Sandy Creek and having a station at Washingtonville; that in February, 1868, the Syracuse Northern Railroad Company was incorporated under the General Railroad Act to construct, and it subsequently did construct, a railroad from Syracuse to the Rome, Watertown and Ogdensburg railroad at Washingtonville and there formed a junction with that road; that prior to such construction a map locating the line and termini of the road was duly adopted by the board of directors and filed as provided by law, covering the location of its line and northern terminus as subsequently constructed; that there was also a railroad from Oswego connecting with the Rome, Watertown and Ogdensburg railroad at Richland, upon which road there was a station called Pulaski station, about four miles westwardly from Richland; that the Syracuse Northern railroad also passed through Pulaski station and thence about one mile to Pulaski village, where it had a station, and thence about five miles in a northerly direction to Sandy Creek village, where there was a station, and thence about a mile to Washingtonville station; that while that road was thus operated the travel from Washingtonville station southerly to Syracuse was through the village of Sandy Creek and Pulaski to Pulaski station, and thence southerly; that before that road was constructed the town of Sandy Creek, under statutory authority, subscribed for $80,000 of the stock of that company and paid therefor in the bonds of the town issued for that amount; that the statutory consent for the bonding of the town was upon the express condition that the railroad should be constructed through the town of Sandy Creek and a permanent depot erected at Sandy Creek village; that a mortgage was given upon that road in 1873, and that mortgage was subsequently foreclosed and the railroad and its franchises were purchased by an individual; that subsequently in September, 1875, a reorganization of the road was effected under "An act to facilitate the reorganization of railroads sold under foreclosure, and providing for the formation of new com-

panies," passed April 11, 1874, and a new company under
the name of the Syracuse and Northern Railroad Company
was organized, which was vested with all the rights, privileges
and franchises which, at the time of the foreclosure sale, be-
longed to or were vested in the Syracuse Northern Railroad
Company ; that subsequently the Syracuse and Northern rail-
road became consolidated with the Rome, Watertown and Og-
densburg railroad under chapter 917 of the Laws of 1869,
and the latter company took possession and assumed control of
the road, and until September 5, 1877, operated the same from
Syracuse, to and through the villages of Pulaski and Sandy
Creek to Washingtonville ; that the consolidation agreement
recited that the Rome, Watertown and Odgensburg railroad
Company owned and operated a railroad from Rome to Og-
densburg, and leased a road from Oswego to Richland Junc-
tion ; that the Syracuse and Northern Railroad Company
owned and operated a railroad from Syracuse to a connection
with the Rome, Watertown and Ogdensburg railroad at
Washingtonville, and that thus the railroads formed a continu-
ous line of railroad between the city of Syracuse and the points
and places to which the railroads of the Rome, Watertown
and Ogdensburg Railroad Company did and were authorized
to extend ; that soon after the defendant ceased to operate
that portion of the Syracuse and Northern road lying between
the Oswego branch of the Rome, Watertown and Ogdensburg
railroad at Pulaski station and Washingtonville, and removed
the track on that section of the road as well as the station-
houses at the villages of Pulaski and Sandy Creek ; that since
that time such abandonment has continued and still exists ;
that the junction formerly maintained at Washingtonville has
been changed with its attendant local advantages to Rich-
land ; that such abandonment was, and continued to be, a
matter of serious damage to the people of the State of New
York, and especially to that portion of the people of this State
who were residents and tax payers of the town of Sandy
Creek, their property and business interests, and compelling
them, when desirous of travel to the village of Pulaski and the

city of Syracuse, to adopt a circuitous route, "involving more or less change of cars, transfer and delay," for which they have no remedy for damages at law; that by chapter 353 of the Laws of 1882, the legislature enacted that there should be created in this State, in the manner and form therein referred to, a board of railroad commissioners with certain powers and duties therein mentioned; that, in pursuance of the provisions of that act, complaint in due form of the abandonment and proceedings above stated was made against the Rome, Watertown and Ogdensburg Railroad Company, to which complaint the company filed an answer; that a hearing was had thereon before the board and after due deliberation, it on the 21st day of April, 1884, adjudged and determined as follows: "The judgment of the board is, that the Rome, Watertown and Ogdensburg Railroad Company had no right or authority to abandon the portion of the Syracuse and Northern road in question, and that in so doing it has violated the laws of the State, and has neglected and now neglects to comply with the terms of chapter 140 of the Laws of 1850, and its amendments, under which the Syracuse and Northern railroad was created; that in so doing and in running its trains *via* Richland Junction, it usurps authority conferred by no act or law of this State. The board hereby notifies the Rome, Watertown and Ogdensburg Railroad Company of said violation, neglect and usurpation, and recommends that said company proceed, within a reasonable time, to and do rebuild, restore and operate said abandoned portion of its road, hereinbefore particularly described;" that a copy of the determination of the board was thereafter served upon the Rome, Watertown and Ogdensburg Railroad Company, but that it failed to comply with the recommendation of the board, and that thereafter, on or about the 15th day of November, 1884, the board of railroad commissioners transmitted, in pursuance of the provisions of the act of 1882, to the attorney-general, a copy of the proceedings and its determination in the above matter.

The application for the *mandamus* was opposed by the defendant upon an affidavit of its general manager, in which

he denied that the alleged abandonment by it of a portion of its former line "has been, or continues to be, a matter of serious damage to the people of the State of New York, and especially to that portion of the people of the State who are residents and tax payers of the town of Sandy Creek, their property and business interests," and stated that, on the contrary, the present lines operated by the Rome, Watertown and Ogdensburg Railroad Company furnished greatly increased facilities to the people of the State of New York, as well as to the people of the town of Sandy Creek, above those which were enjoyed by that community at any time prior to the last two years; that it is now far more convenient for the people of the town of Sandy Creek to reach their principal markets, the cities of Oswego, Syracuse, Watertown and Rome, than at any previous time by means of the lines of the Rome, Watertown and Ogdensburg Railroad Company; that a far greater number of trains, both passenger and freight, are now run than were run before the alleged abandonment, and that it is an absolute fact that the passenger and freight service between the village of Sandy Creek and the cities of Oswego, Syracuse, Watertown and Rome is far more convenient, prompt and efficient than before said abandonment; that it would cost about $70,000 to restore the abandoned track, and that the annual expense of maintaining and operating that portion of the road would be about $15,000, without any addition whatever to the income of the defendant; that the defendant was engaged in a steady and determined effort to make its road in all respects a serviceable agent of the people of the State of New York, and of all the people who have occasion to use its facilities, and that if the restoration were now ordered or compelled by the courts of the State, it would result in diminishing the efficiency of the road for all the people of the State, including the people of the town of Sandy Creek. It further appears, from the papers presented to the court, that since the abandonment complained of, passengers and freight going southerly from Washingtonville are carried to Richland station, thence to Pulaski station, and thence on to Syracuse,

and that passengers and freight from Syracuse are carried to Pulaski station, thence to Richland and thence to Washingtonville; that the passenger cars on the Syracuse and Northern railroad all stop at and depart from Richland station, and that thus the passengers are required to change cars at that station, and that the increased distance from Washingtonville to Pulaski station by way of Richland station is about two miles.

Upon the presentation of these facts, the judge at Special Term granted a peremptory writ of *mandamus* commanding the defendant to proceed " to restore the abandoned portion of said road from the point where said track of the Syracuse and Northern railroad intersects the Oswego branch at Pulaski, through the villages of Pulaski and Sandy Creek to the Washingtonville station, so called, on the line of the Rome, Watertown and Ogdensburg Railroad Company's road upon the route where said road was formerly operated at the time when said road was abandoned, and to rebuild, restore and operate said portions of such road, and to open and operate said road and route by running trains over the same at regular intervals for the accommodation of the public in the transportation of passengers and property." From the order granting the writ the defendant appealed to the General Term, and from affirmance there to this court.

*William B. Hornblower* and *Daniel H. Chamberlain* for appellant. The writ of *mandamus* is a common-law remedy and proceeding and not an equitable one. (Tapping on Mandamus, 55, 56, 57, 58, 59, 62; 2 Johns. Cas. 217; 3 Blackst. Com. 110; *Rex* v. *Bk. of Eng.*, 2 B. & A. 620.) The right to the writ, upon the case made at the Special Term, did not " depend only on questions of law," so as to warrant the judgment there rendered. (Code of Civ. Pro., § 2070; *People, ex rel., etc.*, v. *Board of Apportionment*, 64 N. Y. 627; 91 Chitty on Pleadings, 255, 264, 277, 278, 390, 402, 411; Code of Civ. Pro., § 481; Ram on Facts, 9, 10, 11, 125; 3 Bulst. 95; *Pasley* v. *Freeman*, 3 T. R. 51, 56, 65; *Freeman* v. *Vernon*, 120 Mass. 424, 427; Bigelow on Fraud, 85; *Taylor* v.

*Guest,* 58 N. Y. 261, 266; *Dung* v. *Parker,* 52 id. 494; ·
*Kendall* v. *Stone,* 5 id. 18 ; *People, ex rel. Mott,* v. *Bd. Suprs.,*
64 id. 600, 604; *People* v. *Wendell,* 71 id. 171; *People* v.
*Richards,* 99 id. 620 ; *State* v. *Mayor of Maintown,* 52 Wis.
423, 428; *People, ex rel. Cuyler,* v. *Supervisors,* 5 Week.
Dig. 538.)   Waiving all other points the writ of *mandamus*
is not a remedy to enforce the obligations claimed to rest on
the appellant.  (*Trust Co.* v. *Railroad Co.,* 17 Am. Reg.
[N. S.] 266 ; *People* v. *Railroad Co.,* 70 N. Y. 569 ; *State*
v. *Gorham,* 37 Me. 451; *Cambridge* v. *R. R. Co.,* 7 Metc. 70 ;
*T. & B. R. R. Co.* v. *Boston, H. T. & W. R. R. Co.,* 86 N.
Y. 107 ; *People* v. *R. R. Co.,* 76 id. 294 ; *State* v. *R. R.
Co.,* 9 Rich. 247 ; *R. R. Co.* v. *People,* 56 Ill. 365 ;
*Atty. Genl.* v. *N. B. & C. R. R. Co.,* 1 P. & B. 667 ; *State*
v. *H. & N. H. R. R. Co.,* 29 Conn. 538 ; *Un. Pac. R. R.
Co.* v. *Hall,* 91 U. S. 343 ; 3 Dill. 515 ; *U. S.* v. *U. P. R.
R. Co.,* 4 id. 479 ; *State* v. *Wilmington Bridge Co.,* 3 Harr.
312 ; *In re Trenton Water Power Co.,* 20 N. J. L. 659 ;
*Queen* v. *Bristol Dock Co.,* 2 Q. B. 64; *People* v. *Man.
Co.,* 45 Barb. 136 ; *City* v. *St. Louis Gas Co.,* 70 Mo. 69, 117 ;
*Houston* v. *Com'rs,* 36 Tex. 382; *Riggs* v. *Johnson Co.,* 6
Wall. 166 ; *Mayor* v. *Lord,* 9 id. 409 ; *Norris* v. *Irish Land
Co.,* 8 El. & Bl. 512–525 ; *People* v. *Troy R. R. Co.,* 37 How.
Pr. 427; *R. R. Com'rs* v. *R. R. Co.,* 63 Me. 269; *McCoy* v. *C.
I., St. L. & C. R. R. Co.,* 13 Fed. Rep. 3; *Talcott* v. *Pine Grove,*
1 Flip. 145.)   The writ of *mandamus* is never granted except
to compel the performance of a duty owing to the State. (*People, ex rel.* v. *St. Patrick's Cathedral,* 21 Hun, 181 ; *People,
ex rel.* v. *Green,* 66 Barb. 630 ; *Ex parte Ostrander,* 1 Den.
679 ; *People, ex rel.* v. *Dowling,* 55 Barb. 197; *People, ex
rel.* v. *Clerk Marine Ct.,* 3 Abb. 309 ; *Adriance* v. *Supervisors,* 12 How. Pr. 224 ; *People* v. *Baker,* 14 Abb. 19.)   If
this were a case, in other respects, for peremptory *mandamus*
in the first instance, the duty or obligation of the appellant is
not so absolute and unconditioned as to warrant the granting
of the writ; certainly not in the absence of proof or admission
of injury. (*Queen* v. *York & No. Mid. R. Co.,* 16 Q. B.

19; *S. C.*, 16 Eng. L. & Eq. 299 ; *Queen* v. *Lanc. & York R. Co.*, id. 327; *Queen* v. *Gt. West. R. Co.*, id. 341; 1 Redf. Law of Railways, 673, 675; *York & No. Mid. R. Co.* v. *Reg.*, 1 El. & Bl. 858; *S. C.*, Eng. Law & Eq. 199; *People* v. *Alb. & Vt. R. R. Co.*, 24 N. Y. 261, 263, 264; *Comm.* v. *Fitchburg R. R. Co.*, 78 Mass. 180.)

*D. O'Brien*, attorney-general, for respondent. The operation of the Syracuse Northern road, from Syracuse to the junction of the Rome, Watertown and Ogdensburg road at Sandy Creek, was a charter obligation. (Laws of 1850, chap. 140 ; *Callender* v. *H. & P. R. R. Co.*, 11 Ohio St. 516; *Tenn. & Ala. R. R. Co.* v. *Adams*, 3 Head [Tenn.], 596 ; *Moses* v. *Pittsburg R. R. Co.*, 21 Ill 516 ; *Hentz* v. *L. I. R. R. Co.*, 13 Barb. 646 ; *Mason* v. *Brooklyn & Newtown R. R. Co.*, 35 id. 373; *Mohawk B. Co.* v. *U. & S. R. R. Co.*, 9 Paige, 554.) Said company, after the purchase under the foreclosure sale and its reorganization, became vested with and entitled to enjoy all the rights, privileges and franchises which, at the time of the sale and consolidation, belonged to, or were vested in, the corporation formerly owning the property sold, and subject to all of the duties and liabilities imposed by the provisions of the General Railroad Act of 1850. (Laws of 1869, chap. 917; *P. & R. I. R. Co.* v. *Coal V. M. Co.*, 68 Ill. 489; *C. & R. I. Co.* v. *Moffitt*, 75 id. 524.) The franchise obtained by the company can only be legally exercised by the corporation operating its entire road. (*People* v. *A. & V. R. R. Co.*, 24 N. Y. 261, 267; approved in *T. & B. R. R. Co.* v. *B., H. T. & W R. R. Co.*, 86 id. 107, 129; *Abbott* v. *F. & G. R. R. Co.*, 80 id 30; *People* v. *Railway Co.*, 28 Hun, 554; *People* v. *T. & B R. R. Co.*, 37 How. 427 ; *State* v. *A. & N. R. R. Co.*, 29 Conn. 538, 547; *Talcott* v. *Township of Pine Grove*, 1 Flip. [U. S. Cir.], 144, 145; *Farmers' L. & T. Co.* v. *Henning*, 17 Am. Law Reg. 266; *King* v. *Severn & Wye R. R. Co.*, 2 Barn. & Ald. 646; *U. S.* v. *U. P. R. R. Co.*, 4 Dill. 479; *York & North Midland R. Co.* v. *Regina*, 18 Eng. Law & Eq. 20.) The railroad company is a creature of the

legislature, and is subject to the direction of the court. *Mandamus* is the appropriate remedy to compel railroad companies to perform duties owing to the public. (*Trust Co.* v. *R. R. Co.*, 17 Am. Law Reg. [N. S.] 266; *People, ex rel. Green,* v. *D. & C. R. R. Co.*, 58 N. Y. 152; *People* v. *R. R. Co.*, 70 id. 569; *State* v. *Gorham*, 37 Me. 451; *Cambridge* v. *R. R. Co.*, 7 Metc. [Mass.] 70; *People* v. *R. R. Co.*, 14 Hun, 371; 76 N. Y. 294; *State* v. *R. R. Co.*, 9 Rich. [S. C.] 247; *R. R. Co.* v. *People*, 56 Ill. 365; 1 P. & B. 667; *State* v. *R. R. Co.*, 29 Conn. 538; *R. R. Co.* v. *Hall*, 91 U. S. 343; *Hall* v. *U. P. R. R. Co.*, 3 Dill. 515; *U. S.* v. *U. P. R. R. Co.*, 4 id. 479; *State* v. *R. R. Co.*, 37 Conn. 154; *King* v. *R. R. Co.*, 2 Barn. & Ald. 646; *State* v. *Wilmington Bridge Co.*, 3 Harr. [Del.] 312; *In re Trenton W. P. Co.*, 20 N. J. L. 659; *Regina* v. *Bristol Dock Co.*, 2 Q. B. 64; *People* v. *Manhattan Co.*, 45 Barb. 136; *City* v. *St. Louis Gas Co.*, 70 Mo. 69, 117; *Houston* v. *Commissioners*, 36 Tex. 382; *Riggs* v. *Johnson Co.*, 6 Wall. 166; *Mayor, etc.*, v. *Lord*, 9 id. 409; *Norris* v. *Irish Land Co.*, 8 El. & Bl. 525; *People* v. *Troy R. R. Co.*, 37 How. Pr. 427; *People* v. *N. Y. C. R. R. Co.*, 28 Hun, 543; 30 id. 78; *People* v. *R. R. Co.*, 24 N. Y. 261, 267, 269; *R. R. Com'rs* v. *R. R. Co.*, 63 Me. 269; *McCoy* v. *R. R. Co.*, 13 Fed. Rep. 378; *Talcott* v. *Pine Grove*, 1 Flip. [U. S. Cir.] 145; *R. R. Com'rs* v. *R. R. Co.*, 13 Fed. Rep. 3, 7 and 8.) By section 1991 of the Code of Civil Procedure, the writ of *mandamus* is a State writ. (Tapping on Mandamus, 54, 56, 288; Moses on Mandamus, 194, 199; *People* v. *Collins*, 19 Wend. 64, 68; *U. P. R. R. Co.* v. *Hall*, 91 U. S. 355; *People* v. *Erie R. Co.*, 28 Hun, 554; Laws of 1882, chap. 353; *People, ex rel., Lawrence,* v. *Supervisors*, 73 N. Y. 173; *People* v. *N. Y. R. R. Co.*, 74 id. 302, 307; *Candee* v. *Howard*, 37 id. 653; Wood on Mandamus, 56, 111, 114, 115; Addison on Torts, 1486.) There cannot be any question in this proceeding that the State has not been guilty of any laches in instituting the application against the company. The damage has been a continuing one. The usurpation of the corporate powers constitutes a continuing cause of action to the

people. (*Kellogg* v. *Thomson*, 66 N. Y. 88; *People* v. *Ins. Co.*, 38 Barb. 323; *Waldron* v. *Hawkins*, 10 Wend. 167; Green's Brice's Ultra Vires [7th ed.], 714.)

EARL, J. In his petition, the attorney-general prayed for a peremptory writ of *mandamus*, and one was awarded. Such a writ is authorized only "where the applicant's right to a *mandamus* depends only upon questions of law." (Code, § 2070.) In determining whether this writ was properly issued, therefore, we must consider only such facts alleged in the petition as were not denied or put in issue, and the affirmative allegations of the affidavit presented on the part of the defendant in opposition to the application for the writ. Where the material allegations of the application for a writ are put in issue, or where the answering affidavits contain allegations showing that a peremptory writ ought not to be issued, the court should award an alternative *mandamus* in the first instance, in order that the issues of fact may be regularly tried before the proper tribunal.

As this writ was applied for by the attorney-general on behalf of the people, it must be assumed that it was issued only to subserve a public interest and to protect a public right. If private interests only were involved, the application for the writ by the attorney-general, on behalf of the people, was not proper. In that case, it should have been applied for by the private parties interested, who should have been relators. In order, therefore, to maintain this writ and to justify the action of the court in granting it, we must be able to see, from the undisputed facts alleged, that it was issued to protect some public right or to secure some public interest.

It matters not that the town of Sandy Creek was bonded for the construction of the Syracuse Northern railroad, upon condition that a permanent depot should be erected and maintained at the village of Sandy Creek. If it be assumed that the bonding proceedings created a contract between the town and the railroad company, that contract is not one which could be enforced by this writ of *mandamus* issued on behalf of the peo-

ple.   The contract right and obligation are not, in any proper
sense, a public matter in which the people of the State, in their
sovereign capacity, are interested.   If there is a valid contract
still in force and operative, it must be enforced by some pro-
ceeding taken on behalf of the town, and cannot be enforced
by a proceeding instituted by the attorney-general on behalf of
the people of the State.

But the performance of the contract, if there was a valid one,
never devolved upon the defendant.   The contract obligation
was not a charge or lien upon the property of the Syracuse
Northern Railroad Company, and remained where the unse-
cured obligations of the company rested after the foreclosure
of the mortgage given by it.   It did not pass by the foreclosure
sale to, or devolve upon, its successors, the Syracuse and North-
ern Railroad Company and the Rome, Watertown and Ogdens-
burg Railroad Company.

In a case where the court had a discretion to grant or with-
hold the writ of *mandamus*, the circumstances attending the
bonding of the town of Sandy Creek could well have been con-
sidered in determining that discretion.

Under the act (Chap. 353 of the Laws of 1882) by which
the board of railroad commissioners was constituted, the decis-
ion of that board has no binding or conclusive authority.   No
such effect is given to the decisions of that board by any of the
provisions contained in the act.   Its decision in this case was
merely advisory and recommendatory, and the defendant was
at liberty to obey or disobey it.   It was a sufficient justifica-
tion, however, for the application by the attorney-general for
the writ of *mandamus*, and if the court had had a discretion
to withhold or grant the writ, it might properly have had some
influence in the exercise of that discretion.   But no legal right
in this proceeding can be based thereon.

We are left, therefore, to determine simply whether, upon
the facts which we must assume to exist in this case, the de-
fendant ought, in the public interest, as an absolute duty, to
be compelled to rebuild, maintain and operate the small sec-
tion of road which it abandoned.   We have not here the ques-

tion which would have to be determined if the Syracuse and Northern Railroad Company were still in existence and had abandoned the portion of its road between the Pulaski station and Washingtonville station, so that passengers and freight were carried only to and from the former station. But we have a case where the defendant has succeeded to all the rights and obligations of that railroad company, and the question is, whether it is discharging the duty to the public imposed upon it by the consolidation of that railroad company with it. After the consolidation it had two lines from Pulaski station to Washingtonville, a direct line about seven miles long and a circuitous line by way of Richland about two miles longer. It was not absolutely bound in law to stop any of its trains at the village of Pulaski or the village of Sandy Creek. It would have discharged its whole duty by running its trains through from the Pulaski station to the Washingtonville station without stopping. It would cost it more than $15,000 annually to maintain and operate its direct road from Pulaski station to Washingtonville station without adding $1 to its income.

It could accommodate every passenger and every pound of freight at Washingtonville station or at the Pulaski station by carrying it over a line which it owned by way of Richland. Did it not thus substantially perform the duty which devolved upon it as the successor of the Syracuse and Northern Railroad Company? It carried all passengers and freight from Washingtonville to Pulaski station and Syracuse, and all passengers and freight from Syracuse and Pulaski station to the terminus of the Syracuse and Northern railroad at Washingtonville. How can it be said that it owed a duty to the public to do this over the direct line rather than over a line near by but two miles longer? There is no allegation that any considerable number of people are discommoded, and it does not appear that a single person suffers any harm except that passengers are obliged to change cars at Richland rather than at Washingtonville station, and persons taking the cars at Washingtonville station to go southerly are obliged to travel about two miles farther. But we must take the facts as stated in the affidavits of the defend-

ant's manager, read in opposition to the application for the writ, that it is not true that the abandonment of this small section of road has been and continues to be a matter of serious damage to the people of the State of New York, or especially to that portion of the people of the State who are residents and tax payers of the town of Sandy Creek, but that the present line operated by the defendant between Washingtonville station and Pulaski station furnishes greatly increased facilities to the people of the State of New York as well as to the people of the town of Sandy Creek above those which were enjoyed at the time of the abandonment; that it is now far more convenient for the people of that town to reach their principal markets, the cities of Oswego, Watertown, Syracuse and Rome, than at any previous time, and that their railroad service is altogether more efficient and convenient than it was previous to the time of the abandonment. Under such circumstances we see no reason for saying that the interests of the people have suffered from this abandonment, or that any considerable number of the people of this State were thereby in any way injured or inconvenienced. If a few individuals were discommoded, or private interests were in any way injured, this writ is not the proper remedy for such evils.

We have, with great care, examined and considered the numerous authorities cited on behalf of the people in support of this writ, but we find none which justify it. Several cases were cited in which it was held that a railroad company could be compelled by *mandamus* to operate its railroad to the terminus specified in its charter. (*Farmers' Loan and Trust Co.* v. *Henning as Receiver, etc.*, 17 Am. Law Reg. [N. S.] 266; *State* v. *H. & N. H. R. R. Co.*, 29 Conn. 538; *Un. Pac. R. R. Co.* v. *Hall*, 91 U. S. 343; *King* v. *S. & W. R. R. Co.*, 2 B. & Ald. 646; *People* v. *Albany & Vermont R. R. Co.*, 24 N. Y. 261.) But the principles of those cases are not controlling in this, because here the railroad service is kept up between the termini of the Syracuse and Northern railroad, and the public duty which devolved upon it at its organization is fully and substantially performed by the defendant. The present line is a

little longer than the one originally adopted and slightly varying therefrom, but it accommodates the people of the State and the people of the locality substantially as well as the line originally adopted. Suppose two roads were consolidated and the lines of the two between two places were parallel and near to each other, could the consolidated road be compelled by *mandamus* to operate both lines, or could it discharge its duty to the public by using only one line? Suppose the New York Central and the West Shore roads, as their lines approach the city of Buffalo, were parallel to and near each other, could not the New York Central, which is now substantially the owner of both roads, abandon the West Shore line, and run into the city of Buffalo upon the New York Central line? We do not determine that in all cases where a railroad company which, by consolidation, has become the owner of two lines of road between two termini, and running through different sections of country and different cities or villages, like the two lines between Syracuse and Rochester, could abandon either of its lines, because in such cases it might well be that the public interests and the accommodation of a large portion of the people of the State required that both lines should be operated; but where a railroad company owns by consolidation two lines of road, and can substantially accommodate the people of the State by operating one line between the same points, and can abandon the other line without any serious detriment to any considerable number of people, we do not believe it should be compelled by *mandamus* to operate both lines at a great sacrifice of money upon the fanciful idea that the sovereignty of the State is wounded by its omission to operate both lines.

The defendant does not run its cars at any point where it has not the right to, and it does not exercise any franchise which it is not authorized to. It accommodates all the travel and traffic which the Syracuse and Northern Railroad Company was required to accommodate. That road still has a connection with the defendant; and all the travel and traffic over it can still commence and terminate at Washingtonville. There is no public right to protect and no public duty to enforce by *mandamus*.

We are, therefore, of opinion that the orders of the General and Special Terms should be reversed, and the application for a peremptory writ of *mandamus* denied, with costs.

All concur, except ANDREWS, J., who takes no part, and MILLER, J., absent.

Ordered accordingly.