# METROPOLITAN RAILROAD CO.

## *v.*

## MACFARLAND.

CHARTER, RIGHT TO ALTER, AMEND, OR REPEAL; CONSTITUTIONAL LAW;
CONDEMNATION OF LAND; SPECIAL ASSESSMENTS OF DAMAGES AND
BENEFITS; FINDING OF JURY IN CONDEMNATION CASES, PRESUMP-
TION AS TO.

1. The power to alter, amend, or repeal reserved by Congress in the
granting of a charter, while not to be construed as permitting
arbitrary action or the destruction of vested rights acquired in
good faith under the charter, nevertheless gives Congress the power
to add new duties and obligations to those originally imposed in
the charter, even though they may require the expenditure of
large sums of money; and especially may Congress require a
street railway company, holding a charter containing such pro-
vision, to extend its tracks and make such connections with other
railways as the convenience of the public may require, regardless
of the consent of the company.
2. The act of Congress of June 6, 1900, compelling the Metropolitan
Railroad Company to extend its tracks along Columbia road and
Sixteenth street to Park street, is not a taking of property for
public or private use without just compensation or due process
of law, but is a valid constitutional exercise of the power re-
served to Congress in the charter of the company, to alter, amend,
or repeal the same.
3. A street railway company, although owning no abutting property
along the line of certain streets which an act of Congress pro-
vides shall be widened and improved, and along which the com-
pany is directed to extend its tracks, but holding a franchise
and having a right to an easement in the bed of the streets, can
be required by Congress to bear such portion of the expenses of the
improvement as a jury shall find to be proportional to the benefit
received thereby, although the act provides that the amounts as-
sessed as benefits shall be collected as special assessments are
collected and against the parcels of land benefited; such method
of collecting the benefits not being exclusive of all other methods
of so doing.

4. In the absence of any evidence to show that a jury of award in a proceeding for the condemnation of land, has acted recklessly and unjustly in the assessments of benefits derived from the widening and improvement of a street in pursuance of an act of Congress, upon abutting landowners and others, it will be assumed that the verdict so rendered is reasonable.

No. 1147. Submitted May 16, 1902. Decided October 15, 1902.

HEARING on an appeal from an order of the Supreme Court sitting as a District Court of the United States, overruling exceptions to an award of a jury in a proceeding to condemn land and finally ratifying and confirming the same.
*Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from the decree of the court below sitting as a district court, confirming a special assessment against the appellant, the Metropolitan Railroad Company, in the sum of $25,000, as and for benefits accruing or that will accrue to the railroad company by reason of the extension and widening of Columbia road and what is known as Old Sixteenth street, in the District of Columbia. The proceedings were instituted by the Commissioners of the District of Columbia, under the act of Congress of June 6, 1900, providing for the widening of Columbia road and what is known as Old Sixteenth street, and the extension of the Metropolitan railroad from its present terminus at Columbia road and Eighteenth street, northwest, along said road and Old Sixteenth street to Park street.

As directed by the act, a jury of seven were impaneled, and thereafter and before concluding upon their verdict, the court was applied to by the appellant to give instructions to the jury to guide them in making up their verdict under the provisions of the statute. Of the several instructions proposed on behalf of the appellant, those which sought to exempt the appellant from all liability to assessment for benefits by reason of the widening and grading the ways men-

tioned were rejected; but others of such proposed instructions were granted by the court, to wit:

" 2. The jury is instructed that it can assess such benefits only against the Metropolitan Railroad Company, if any, as it has been shown by the evidence in the case will result to said company from the extension of Columbia road and present Sixteenth street, as provided in the act of Congress of June 6, 1900.

" 3. The jury is instructed that it is not required to assess any part of the amount which it shall award as damages for and in respect of the land condemned in these proceedings against the Metropolitan Railroad Company, and that it is its duty not to do so unless it is satisfied by a fair preponderance of the evidence that the said company will be specially benefited by the proposed extension of Columbia road and the present Sixteenth street, and, in case it shall be so satisfied, it is its duty to assess against the said railroad company only such sum as shall be a fair and reasonable measure of such benefits.

" 4. In determining the question whether or not said railroad company will be benefited by the said extension and the extent of such benefit, if any, the jury should consider the cost to which said company will be put in extending its lines from its present terminus, as provided in the act of June 6, 1900, and the increased cost of operating its said lines as shown by the testimony, in connection with such evidence in the case as may tend to establish the fact and amount of such benefits to it."

The jury, under the foregoing instructions, returned their verdict to the court, showing the parcels of land required to be taken for the widening of the streets, and assessing the damages to be paid to the several owners thereof, at the aggregate amount of $181,858, and assessing the benefits at $90,929; and of this latter amount the sum of $25,000 was assessed to be paid by the Metropolitan Railroad Company, as its proportional part of the benefits, and the residue of the aggregate sum assessed for benefits was apportioned against certain parcels of land owned by various per-

sons, but none of which land assessed was owned by the railroad company.

To this verdict of the jury the appellant filed exceptions, alleging that the verdict was without evidence to support it; that it was against the weight of evidence; and for errors of law in the instructions given, and for error in refusing to grant instructions proposed by the appellant. These exceptions were all overruled by the court, and the verdict of the jury was finally ratified and confirmed; and it is from that order that the appeal is taken.

As the constitutionality of the act of Congress of June 6, 1900, is brought into question, and also some of the provisions of that act are supposed to be of doubtful construction, it would seem best for the clear understanding and determination of those questions, that the provisions of the act, so far as they relate to the matters in controversy, be set out in the terms of the act itself. The sections of the act that have a bearing upon the questions involved are the following:

" *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Metropolitan Railroad Company of the District of Columbia be, and the same is hereby, authorized and required to extend by double tracks the lines of its underground electric railroad from its present terminus at the intersection of Eighteenth street and Columbia road easterly along Columbia road to the present Sixteenth street northwest, thence north along Sixteenth street to Park street: *Provided,* That no cars shall be switched in the streets after the expiration of two years from the passage of this act.

" SEC. 2. That before such extension shall be constructed Columbia road shall be widened to a width of one hundred feet, the present Sixteenth street shall be widened to a width of eighty-five feet from Columbia road to Park street, and in such widening the building restriction line on the eastern side of said street shall be taken as far as practicable to form the eastern side of said street when widened; and also sufficient land shall be acquired at the northwesterly

corner of Columbia road and Sixteenth street so as to allow the street-railway tracks to be laid wholly without the roadway of Sixteenth street as extended according to the highway extension plans; all in accordance with plans to be prepared by the Commissioners of the District of Columbia; and the said Commissioners shall institute in the Supreme Court of the District of Columbia, sitting as a District Court, by petition, particularly describing the lands to be taken, a proceeding *in rem* to condemn the land that may be necessary for the extension of Columbia road and the present Sixteenth street as herein provided, with a width of one hundred feet: *Provided,* That the said Commissioners are authorized and empowered to locate the lines of the railroad of said company within the area so to be acquired as aforesaid: *And provided further,* That the operation of the cars of the Metropolitan railroad within the Capitol grounds shall be under the control of the architect of the Capitol: *And provided further,* That no tracks shall be laid on any portion of the roadway of Sixteenth street as extended according to the highway extension plans.

" Sec. 3. That the extensions of the lines of the Metropolitan Railroad Company herein provided for shall be completed and put in operation within one year from the date of the widening of said highways as herein provided, and said company shall deposit with the collector of taxes of the District of Columbia such sums as are necessary to pay the cost of inspection of said work.

" Sec. 4. That of the amount found to be due and awarded as damages for and in respect of the land condemned for the extension of Columbia road and the present Sixteenth street, as herein provided, such proportional amounts thereof as the jury hereinafter provided shall determine shall be assessed by said jury as benefits, and to the extent of such benefits, against respectively the Metropolitan Street Railroad Company, and collected as special assessments are collected, and against those pieces or parcels of land on each side of said Columbia road and the present Sixteenth street northwest along those portions of said streets that are to

be widened, and also on any or all pieces or parcels of land which will be benefited by the extension of said Columbia road and the present Sixteenth street northwest as said jury may find said pieces or parcels of land will be benefited; and in determining the amounts to be assessed against said pieces or parcels of land the jury shall take into consideration the respective situations of such pieces or parcels of land and the benefits they may severally receive from the extension of Columbia road as aforesaid: *Provided,* That if the aggregate amount of the benefits to be assessed against those pieces or parcels of land on each side of said Columbia road and the present Sixteenth street northwest along those portions of said streets that are to be widened, and also on any or all pieces or parcels of land which will be benefited by the extension of said Columbia road and the present Sixteenth street northwest as said jury may find said pieces or parcels of land will be benefited, as determined by said jury pursuant to the provisions hereof, is less than one-half of the amount of the damages awarded for and in respect of the land condemned, the Commissioners of the District of Columbia may, in their discretion, within thirty days after the filing of said award, reject the award and assessment of said jury, and all proceedings hereunder shall be null and void.

" SEC. 5. That the said court shall cause public notice of not less than ten days to be given of the filing of said proceedings, by advertisement in such manner as the court shall prescribe, which notice shall warn all persons having any interest in the proceedings to attend court at a day to be named in said notice and to continue in attendance until the court shall have made its final order ratifying and confirming the award of damages and assessment of benefits of the jury; and in addition to such public notice said court, whenever in its judgment it is practicable to do so, may cause a copy of said notice to be served by the marshal of the District of Columbia, or his deputies, upon such owners of the land to be condemned as may be found by said marshal, or his deputies, within the District of Columbia.

" SEC. 6. That after the return of the marshal and the filing of proof of publication of the notice provided for in the preceding section, said court shall cause a jury of seven judicious, disinterested men, not related to any person interested in the proceedings, and not in the service or employment of the District of Columbia or of the United States, to be summoned by the marshal of the District of Columbia, to which jurors said court shall administer an oath or affirmation that they are not interested in any manner in the land to be condemned nor are in any way related to the parties interested therein, and that they will, without favor or partiality, to the best of their judgment, assess the damages each owner of land taken may sustain by reason of the extension of said street and the condemnation of lands for the purposes of such extension, and assess the benefits resulting therefrom as hereinbefore provided. The court, before accepting the jury, shall hear any objections that may be made to any member thereof, and shall have full power to decide upon all such objections, and to excuse any juror or cause any vacancy in the jury, when impaneled, to be filled; and after said jury shall have been organized and shall have viewed the premises, said jury shall proceed, in the presence of the court, if the court shall so direct, or otherwise as the court may direct, to hear and receive such evidence as may be offered or submitted on behalf of the District of Columbia and by any person or persons having any interest in the proceedings for the extension of said street. When the hearing is concluded the jury, or a majority of them, shall return to said court, in writing, its verdict of the amount to be found due and payable as damages sustained by reason of the extension of said street under the provisions thereof, and of the pieces or parcels of land benefited by such extension and the amount of the assessment for such benefits against the same.

" SEC. 7. That if the use of a part only of any piece or parcel of ground shall be condemned, the jury, in determining its value, shall not take into consideration any benefits that may accrue to the remainder thereof from the extension of

said street or highway, but such benefits shall be considered in determining what assessment shall be made on or against such part of such piece or parcel of land as may not be taken as hereinbefore provided.

" Sec. 8. That the court shall have power to hear and determine any objections which may be filed to said verdict or award, and to set aside and vacate the same, in whole or in part, when satisfied that it is unjust or unreasonable, and in such event a new jury shall be summoned, who shall proceed to assess the damages or benefits, as the case may be, in respect of the land as to which the verdict may be vacated, as in the case of the first jury: *Provided,* That if vacated in part, the residue of the verdict and award as to the land condemned or assessed shall not be affected thereby: *And provided further,* That the exceptions or objections to the verdict and award shall be filed within thirty days after the return of such verdict and award.

" Sec. 9. That when the verdict of said jury shall have been finally ratified and confirmed by the court, as herein provided, the amounts of money awarded and adjudged to be payable for lands taken under the provisions hereof shall be paid to the owners of said land by the Treasurer of the United States, *ex-officio* commissioner of the sinking fund of the District of Columbia, upon the warrant of the Commissioners of said District, out of the revenues of the District of Columbia; and a sufficient sum to pay the amounts of said judgments and awards is hereby appropriated out of the revenues of the District of Columbia.

" Sec. 10. That when confirmed by the court the several assessments herein provided to be made shall severally be a lien upon the land assessed, and shall be collected as special improvement taxes in the District of Columbia, and shall be payable in four equal annual instalments, with interest at the rate of four per centum per annum from the date of confirmation until paid. That said court may allow amendments in form or substance in any petition, process, record, or proceeding, or in the description of property proposed to be taken, or of property assessed for benefits whenever such

amendments will not interfere with the substantial rights of the parties interested, and any such amendment may be made after as well as before the order or judgment confirming the verdict or award aforesaid."

*Mr. Charles C. Cole, Mr. J. J. Darlington,* and *Mr. R. Golden Donaldson* for the appellant:

1. The appellant cannot be compelled to extend its lines without the consent of its board of directors or stockholders, and if the act of Congress in question should be construed to require such extension without such consent, it would constitute an attempt to take private property for public or private use without compensation and without due process of law. *Missouri Pac. Ry. Co.* v. *Nebraska,* 164 U. S. 403, 417 and cases there cited; *C. B. & Q. RR. Co.* v. *Chicago,* 166 U. S. 226; *Smythe* v. *Ames,* 169 U. S. 468 and cases there cited; *Zabriskie* v. *Hackensack RR.,* 3 C. E. Green, 178, 192, 193; *People* v. *L. S. & M. S. RR. Co.,* 52 Mich. 277; *Chicago & Grand Trunk RR.* v. *Hough,* 61 Mich. 507; *K. R. & R. I. RR. Co.* v. *Marsh,* 17 Wis. 13, 17, 18; *Ames* v. *L. S. & M. S. RR.,* 21 Minn. 241, 255, 256; *Cross* v. *Peach Bottom RR. Co.,* 90 Pa. St. 392, 395; *Orr* v. *Bracken Co., etc.,* 81 Ky. 593, 594, 595, 596; *Troy & Rutland RR. Co.* v. *Kerr,* 17 Barb. 581, 603, 604; *Hill* v. *Glasgow RR.,* 41 Fed. Rep. 610–616; *Miller* v. *N. Y. & Erie RR. Co.,* 21 Barb. 513, 519.

The power of Congress under the reservation of the right to alter, amend, or repeal is not an unlimited one. *Miller* v. *State,* 15 Wall. 498. See also *Shields* v. *Ohio,* 95 U. S. 319, 324, 325; *Sinking Fund Cases,* 99 U. S. 700, 720, 721; *County of San Mateo* v. *Southern Pacific RR. Co.* ("Railroad Tax Cases"), 13 Fed. Rep. 722, 754, 777; *County of Santa Clara* v. *Southern Pacific RR. Co.,* 18 Fed. Rep. 385, 407; *Southern Pacific RR. Co.* v. *Board of Railroad Commissioners,* 78 Fed. Rep. 236; *Smyth* v. *Ames,* 169 U. S. 468.

2. Even if the act requiring the appellant to extend its road were valid, and it should be assumed that it will ex-

tend it in accordance therewith, the assessment is void as being speculative and not based upon any facts tending to show that appellant would be benefited in any manner or to any extent. Indeed the contrary is shown by the only evidence adduced. Remote or speculative benefits should not be taken into consideration in any case. *Norwood* v. *Baker,* 172 U. S. 269; Elliott on Roads and Streets, Sec. 247; *Railroad Co.* v. *Tyree,* 7 W. Va. 693; *Beekman* v. *Jackson County,* 18 Oreg. 283; *Friedenwald* v. *Mayor of Baltimore,* 74 Md. 116. It is not competent to take into account possible future benefits that accrue from the increase of business, nor is it proper to take into account possible profits that the opening of the highway may bring to the owner of the land. *Brown* v. *Providence,* 5 Gray, 35; *O. C. F. R. RR.* v. *Plymouth,* 14 Gray, 155; *Watterson* v. *Allegheny V. RR.,* 74 Pa. St. 208; *Boston & M. RR.* v. *Middlesex,* 1 Allen, 324. See also *Smyth* v. *Ames,* 169 U. S. 466.

3. Notwithstanding the only evidence adduced in relation to the benefit to the appellant was to the effect that it would cost $117,000 to extend its road and would increase its operating expenses $8,000 annually, and require 900 additional passengers daily to pay the interest on the money borrowed to make the extension, and meet the increased operating expenses, and that the extension would not increase its passenger traffic, the jury ignored the sworn evidence and made the assessment upon a purely speculative theory and unwarranted assumption of its own contrary to the instructions of the court. It was error for the jury so to proceed and the court should have set its verdict aside. The jury may not ignore the sworn evidence and fix the compensation and damages directly contrary thereto. *Atchison, Topeka, etc., RR.* v. *Schneider,* 127 Ill. 144; Encyc. Pl. & Pr., Vol. 7, pp. 581 and 583, and cases there cited; Lewis on Eminent Domain, Sec. 425; *Lafin* v. *Chicago, etc., RR.,* 93 Fed. Rep. 415; *City of Grand Rapids* v. *Perkins,* 78 Mich. 93; *Kansas City* v. *Baird,* 98 Mo. 215; *Munkewitz* v. *C., M. & St. P. RR.,* 64 Wis. 403; *Fowler* v. *Railroad Co.,* 132 Pa. St. 524; *Clase* v. *Sawn,* 27 Iowa, 503. The jury, in awarding

damages and assessing benefits, must conform to the court's instructions. *Lehigh Valley RR.* v. *Chicago,* 26 Fed. Rep. 417. When the evidence conflicts the jury may use its view of the premises to settle the controversy; but here there was nothing to view. Appellant had nothing along either of the streets to be widened. 1 Thompson on Trials, Secs. 889–902, especially Sec. 895. The only way to determine whether appellant would be benefited or not was to consider the cost of construction, the increased operating expenses, and the probable increased earning capacity derived from the extension. *Smyth* v. *Ames,* 169 U. S. 468. The jury failed to consider any of these. Although it might be held that the statute is valid and the proceeding regular, this assessment would be depriving the appellant of its property without due process of law. *C. B. & Q. RR.* v. *Chicago,* 166 U. S. 226. The contention that the defendant has been deprived of property without due process of law is not entirely met by the suggestion that he had due notice of the proceedings and appeared and made defense. The court may keep within the letter of the statute prescribing the form of the proceeding and yet its action not be due process. *C. B. & Q. RR.* v. *Chicago,* 166 U. S. 226, 233–235. Regard must be had to substance and not to form. *Norwood* v. *Baker,* 172 U. S. 269. See also *Illinois Central RR.* v. *Decatur,* 147 U. S. 190, 202.

4. While the cases heretofore cited related to the assessments against land, the same principle very strongly applies to this case. The exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking under the guise of taxation, of private property for public use without compensation. *Norwood* v. *Baker,* 172 U. S. 269. There can be no justification for any proceeding which charges the land with an assessment greater than the benefits; it is a plain case of appropriating private property to public uses without compensation. Cooley on Taxation (2d ed.), chap. XX. See also *Macon* v. *Patty,* 57 Miss. 378, 386; *State* v. *Newark,* 37 N.

J. L. 415, 416, 420–423. Whenever a local assessment upon an individual is not grounded upon and *measured by, the extent of his particular benefit,* it is, *pro tanto,* a taking of his private property for public use without any provision for compensation. *Hammett* v. *Philadelphia,* 65 Pa. St. 146, 151, 153. The same rule is laid down in *Tidewater Co.* v. *Coster,* 18 N. J. Eq. (3 C. E. Green) 519, and many other authorities. A statute making such reduction in the rates of toll of a turnpike company as will prevent it, out of its receipts, from maintaining its road in proper condition, or from earning any dividends on its stock, deprives it of property without due process of law. *Covington & L. Turnpike Co.* v. *Sanford,* 164 U. S. 578. The defendant cannot be legally required to expend its money in an enterprise not accepted and determined upon by its board of directors or stockholders. Such action would be the taking of its property, either for public or private use without compensation, and also without due process of law. *Missouri Pac. Ry. Co.* v. *Nebraska,* 164 U. S. 403, and cases cited; *State* v. *Chicago, M. & St. P. Ry.,* 36 Minn. 402. A railroad company cannot be compelled to extend its road at a loss. *People ex rel* v. *Chicago RR. Co.,* 25 Am. & Eng. R. Cas. 258; *People ex rel. Bliss* v. *Railroad Co.,* 118 Ill. 113.

*Mr. Andrew B. Duvall,* Corporation Counsel, and *Mr. Edward H. Thomas* and *Mr. Arthur H. O'Connor,* Assistants, for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

1. The first and principal question raised is that which denies the constitutionality of the act of June 6, 1900, in so far as it requires the appellant, the railroad company, to extend by double tracks the lines of its underground electric railroad from its present terminus along the Columbia road and Sixteenth street to Park street. It is contended that the appellant cannot be compelled to extend its lines with-

out the consent of its board of directors or stockholders; as by compelling the company so to extend the lines of its road without its consent would be taking private property for public or private use without compensation, and without due process of law. If this contention be well founded, it must follow as a necessary consequence that the right to the assessment made against the appellant for benefits that would accrue to it by the widening of the streets along which the extension is required to be made, must fail, and be declared to be without warrant or justification.

But is the act of Congress unconstitutional in the provision that requires the extension of the road? By the charter of the Metropolitan Railroad Company, act of Congress of July 1, 1864, and so in the charters of the companies subsequently embraced by that company, it is expressly declared " that this act may at any time be *altered, amended, or repealed* by the Congress of the United States."

It may be conceded that this reserved power in Congress is not entirely without limit, and that the power to alter, amend, or repeal must be exercised within reasonable bounds for the preservation of right and justice. It has been said by high authority, that the power must not be exercised in such arbitrary way as to destroy vested rights acquired in good faith under the chartered powers of the corporation. But it does not follow that this power to alter or amend may not be exercised to add new duties and obligations to those originally imposed, though such new duties and obligations may require the expenditure of large sums of money in their performance.

The question is, for what purpose was this power of alteration, amendment, and repeal reserved, if not to be exercised to promote the interest of the public, and to meet the requirement of that interest as it may arise? It was certainly not only intended to authorize the making of mere formal changes in the charter, but, as it has been most justly said, one of the most obvious reasons for reserving to the legislature the right to alter, amend or repeal such charters is to enable it to compel an unwilling corporation to perfect and

extend its connections with other railroads, or to extend its road to certain localities, as the convenience of the public may from time to time require. *Mayor, etc., of Worcester* v. *N. & Worcester Railroad Co.*, 109 Mass. 103, 113. And especially is this reason applicable, and with much greater force than in ordinary cases of railroads, when invoked in the case of an unwilling street railroad company already in the use and enjoyment of a most valuable and extensive franchise, excluding all other roads from many of the principal streets of the city, and as to those streets constituting a monopoly. If the extension of such road cannot be required to the less populous portions of the city, those sections may be entirely deprived of the benefit of street railroad facilities and improvement,— improvement indispensable to the extension and development of a city. Indeed, we may well suppose that it was within the contemplation of all parties concerned, at the time the charter was granted, that the lines of the road should, from time to time, be extended to meet the convenience and need of the public, and to conform to the growth and extension of the city. Legislation to meet such need has been had, upon several occasions, requiring such extension of this road, and without attempted resistance on the part of the corporation. Act of Cong., Aug. 2, 1894, Sec. 2 (28 Stats. p. 217); act of Cong., Feb. 26, 1895 (28 Stats., p. 682); act of Cong., Feb. 27, 1897 (29 Stats., p. 600).

It is contended that Congress could not exercise the power of requiring or compelling the extension of the lines of the road, as required in this case, without the consent of the corporation. But to sustain such a contention would simply render the reserved power to Congress to alter, amend, or repeal the charter, nugatory and without effect. The very object of the reservation of the power in the charter was to dispense with the consent of the corporation, and to retain a power superior to the mere will of the corporation, or those who compose it. Nor can the exercise of such reserved power be construed as impairing the obligation of a contract as between Congress and the corporation. Nor is there the slightest ground for the contention urged by the appellant,

that the proceeding in this case, under which the assessment was made against the appellant, deprives the latter of its property without due process of law. *Davidson* v. *New Orleans,* 96 U. S. 97, 105–6.

There are numerous decisions of the question as to the extent of the legislative power over charters granted subject to the right of alteration, amendment and repeal; but we shall not extend this opinion by citing many of them. In Massachusetts there have been several well-considered cases upon the subject, and which have been cited and approved by decisions of the Supreme Court of the United States. In that State the revised statutes contain a provision that every act of incorporation, passed since March 11, 1831, shall at all times be subject to amendment, alteration, or repeal, at the pleasure of the legislature. In the case of *Fitchburg Railroad Co.* v. *Grand Junction Railroad Co.,* 4 Allen, 198, 205, the clause of the revised statutes just mentioned was applied to special statutes of 1856, Ch. 296, and 1857, Ch. 128, which required the Fitchburg, the Grand Junction and the Boston and Lowell railroad corporations, to make expensive changes at their crossings, and to erect a bridge of specified dimensions and materials, and construct a connecting track, and which directed how the work should be superintended, and how the expense should be apportioned. The objection was taken there that the legislature, in the special acts, had transcended its power in requiring the improvements to be made regardless of the consent of the corporations, and their right to control the work. But the court held, that, under the clause of the revised statutes, the changes were rightly ordered, and that the legislature might prescribe by whom, in what manner, and under whose supervision the work should be accomplished, and in what proportions, according to their respective interests, it should be paid for by the parties affected by it.

The same principle was reaffirmed and applied in the subsequent case of *Commonwealth* v. *Eastern Railroad Co.,* 103 Mass. 254. In that case, a statute requiring a railroad corporation whose charter was subject to amendment, altera-

tion, or repeal, at the pleasure of the legislature, to establish a flag station at a certain point on its line, and to erect there a station house, at which at least two trains each way should stop each day, was held to be clearly within the power of the legislature, under the reserved power to alter or amend. In the opinion of the court, by Chief Justice Chapman, after referring to the case in 4 Allen, to which we have just referred, it is said.: " But, independently of the authority of those cases, it seems to us that the clause was intended to provide for such a case as the present. If the directors of a railroad were to find it for the interest of the stockholders to refuse to carry any freight or passengers except such as they might take at one end of the road and carry entirely through to the other end, and were to refuse to establish any way stations or do any way business for that reason, though the road passed for a long distance through a populous part of the State, this would be a case manifestly requiring and authorizing legislative interference under the clause in question. And on the same grounds, if they refuse to provide reasonable accommodation for the people of any smaller locality, the legislature may reasonably alter and modify the discretionary power which the charter confers upon the directors, so as to make the duty to provide the accommodation absolute. Whether a reasonable ground for interference is presented in any particular case is for the legislature to determine; and their determination on this point must be conclusive."

That case, with the paragraph from the opinion just quoted, was referred to with approval and adopted by quotation by the Supreme Court of the United States, in the case of *Northern Pacific Railroad* v. *Dustin,* 142 U. S. 492, 503–4.

In the more recent case of *Mayor and Aldermen of Worcester* v. *Norwich and Worcester Railroad Co.,* 109 Mass. 103, it was held that the right of the legislature to amend, alter, or repeal the charter of a railroad corporation, under the General Statutes, Ch. 68, includes authority both to withdraw powers granted to the corporation, and to con-

fer new powers on it, and to require their exercise, and that
independently of the assent of the corporation.   In that
case, the statute required of the defendant corporation, and
certain other railroad corporations to unite in the erection
of a station in the city of Worcester, for the accommodation
of the passenger trains of all said corporations.   The act
further provided that the station should be located on the
northerly side of the main tracks of the Boston and Albany
Railroad Company, between Green street and Grafton street,
or upon the easterly side of Grafton street, and not more
than fifteen hundred feet distant therefrom.   The power of
the legislature thus to require the railroad corporations to
unite in the erection of the station, and to change their
tracks, was strongly resisted by the railroad corporations,
upon the grounds, that, by discontinuing the locations of
the corporations named, and requiring them to locate and
construct new railroads not within their existing locations,
would interfere with vested rights, impair the obligation of
contracts, and appropriate private property to public use
without providing compensation therefor; and, consequently,
such legislation was unconstitutional and void.   But the
court held the statute to be constitutional and valid, and to
be a reasonable exercise of the power reserved to the legis-
lature to amend, alter, or repeal the charters of the com-
panies.   And in the opinion of the court, it is said:  "At
any rate, the legislature was the exclusive judge as to that
matter, and an amendment of the several charters, so as to
secure such an object, was a reasonable exercise of their
reserved right.   It is no valid objection to such amendments,
that they require corporations to extend their tracks, and to
exercise the right of eminent domain for this purpose, and
to incur additional expense.   The power to extend their
tracks is often granted at their own request; and is granted
with no less propriety when the interests of the public re-
quire it.   The power to alter a charter includes the right to
take away some of the powers granted by it, or to add new
powers without which improvements of the greatest im-
portance would be *ultra vires*.   Their compensation for the
outlay is in the tolls they receive from travelers or others."

The decision just cited is quoted with entire approval by the Supreme Court of the United States, in the case of *Shields* v. *Ohio,* 95 U. S. 319, 325; and the decision in this latter case would seem to be quite sufficient to sustain the validity of the act of Congress of June 6, 1900, in respect to the power to require the extension of the defendant's line of road. And the act of Congress being valid, and creating a specific duty to extend the road of the defendant as prescribed, if that duty is neglected or refused to be performed, it may be enforced by *mandamus* against the corporation. *Northern Pacific Railroad* v. *Dustin,* 142 U. S. 492; *Union Pacific Railroad* v. *Hall,* 91 U. S. 343; *New Orleans, Etc., Railway Co.* v. *Mississippi,* 112 U. S. 12.

2. But notwithstanding the defendant corporation may be required and compelled to extend the line of ·its road, as prescribed in the act of Congress, it is contended that it is not subject to assessment for benefits, and therefore, the apportionment of the assessments made for benefits to property along the line of the specified extension, as the consequence resulting from the widening of the streets, so far as the defendant corporation is concerned, is absolutely null and void. This contention is founded upon the theory, that because the corporation is not at present the owner of any abutting property along the line of the proposed extension, therefore it cannot be legally assessed for benefits to the road to be hereafter extended. But we cannot assent to this proposition.

Instead of requiring the railroad company to acquire and prepare its own right of way along the extension, Congress deemed it best to require that the streets, to the extent of the required extension, should be widened and graded by and under the authority of the Commissioners of the District. This, however, did not relieve the railroad company from an obligation to pay a fair proportion of the expense of widening the streets, the assessment to be apportioned to the benefits that it would receive from the improvement, in common with the abutting landowners. This is what is required by the terms of the act of Congress, and we think it

but fair and just; and the case would seem to be strictly within the principle of the decision of *Fitchburg Railroad Co.* v. *Grand Junction Railroad Co.,* 4 Allen, 198. It is true, the defendant has no abutting property along the line of the designated extension, but it has a franchise and a right to an easement in the bed of the streets, that constitute property, and such right may be subject to the assessment for benefits; at any rate, Congress has made it so, and there can be no question of the right of Congress to prescribe such a basis of assessment. It is not upon abutting property, but against the railroad company that the proportional assessment is required to be made, and which has been so made. This proportional assessment, it is true, is directed to be collected as special assessments are collected; but this is not exclusive of all other methods of collection. *New Haven* v. *Fair Haven & Westfield Railroad Co.,* 38 Conn. 422. By the assessment and apportionment of benefits by the jury, and confirmation of the verdict by the court, the right is settled, and the mode of collection is a question of a subordinate character. *People* v. *Lawrence,* 36 Barb. 177.

It is urged by the appellant that the apportionment of the assessments of benefits by the jury among the abutting landowners and the railroad company was not just and equitable, and therefore should be set aside. But there is nothing in the record to show, and we cannot assume, in the absence of sufficient proof, that the jury have acted recklessly and unjustly, and without regard to the rights of the parties, and the instructions of the court, given them at the instance of the appellant. Those instructions were as favorable as the appellant could reasonably ask, and we have no evidence in the case that the jury did not pay proper regard to them. They viewed the premises, as they were required to do by the statute, and heard such evidence as either party thought proper to offer for their consideration, and their verdict can only be questioned and shown to be unjust or unreasonable, by clear and indubitable evidence.

Finding no error in the rulings of the court below, the order appealed from will be affirmed; and it is so ordered.

*Order affirmed.*